G. R. KIRK CO., F. W. MYERS & CO. *v.* UNITED STATES

.No. 5387.—Invoice dated Newcastle, N. B., November 29, 1937.
 Entered at Purt Huron, Mich., December 4, 1937.
 Entry No. A 1212.

(Decided August 14, 1941)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel), *J. Stuart Tompkins*, associate counsel, for the plaintiffs.

*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett* and *Joseph E. Weil*, special attorneys) for the defendant.

BROWN, Judge: This is an importer's appeal to reappraisement from the value found by the appraiser at the port of Port Huron, Mich., on an importation of Christmas trees from Bridgewater, Nova Scotia.

These trees were of various sizes running, according to the invoice and entry, from 2 to 3 feet in length to trees of 12 feet in length. Each sized tree was tied with twine into a bundle or bale consisting of a definite number of trees of that size alone. The 2- to 3-foot trees were packed 8 to a bundle or bale; the 3- to 4-foot size 6 to a bale; and so on to the 12-foot size which was packed in bales containing but one tree each.

The merchandise was entered at a unit value of 40 cents per bale, packed, as invoiced, with the notation in the invoice "Tags and Staples (American Goods Returned)," evidently the cost of this item not having been included in the entered unit value.

The bales containing the two smallest sizes, namely, 2- to 3-foot and 3- to 4-foot trees, were appraised at 40 cents per bale unit export

value, packed, as invoiced. The bales containing the larger sizes, namely 5- to 6-foot on up to 12-foot trees, were advanced in unit value by the appraiser to 60 cents per bale export value, packed.

The importer now appeals to reappraisement, contending that there should have been no advance and that 40 cents per bale, irrespective of the size (or number) of trees in each bale, more than represented the export unit value, packed, without including the value of tags and staples which are claimed to be American goods returned and, therefore, not dutiable.

The trial was prolonged by two adjournments. The first hearing was before Judge Keefe at Tacoma, Wash., July 31, 1939, where oral testimony was given by J. Ridgway Kirk, the sole owner of the importing firm of G. R. Kirk Co., called as a witness in behalf of the plaintiff-importer. At this hearing there were also received in evidence as illustrative exhibit 1 samples of various colored tags which the testimony showed were similar to tags which had been affixed by staples to each of the imported trees at the time of purchase at the place of export, for identification (R. p. 14). There was also received in evidence as exhibit 2 an affidavit executed July 24, 1939, by R. S. Crandall, who had been an employee of G. R. Kirk Co., the importer, in 1937 at the time of the importation here involved, who had charge of the purchase of trees shipped from Nova Scotia by the plaintiffs.

At the adjourned hearing in New York, also before Judge Keefe, on April 30, 1940, oral testimony was given by J. I. Hollandsworth, employed by the plaintiff-importer in buying Christmas trees in New Brunswick for several years, including the year 1937, the time of the involved importation. There was received in evidence as plaintiffs' exhibit 3 a form of agreement used by G. R. Kirk Co. and the witness in the purchase of trees in New Brunswick during the year 1937 (R. p. 43). There was received in evidence, as plaintiffs' exhibit 4, 3 pages of an affidavit, executed by the witness and which had previously been rejected as a whole, showing the prices paid by the plaintiffs for imported trees, the sellers' names, and the number of bales covered by each transaction (R. p. 67).

At a second adjourned hearing held before Judge Brown at Detroit, Mich., on December 13, 1940, oral testimony in behalf of the defendant was given by Archie McKenzie, acting appraiser at Port Huron, the port of entry, who, as clerk assisting the appraiser, had passed on the importation here involved and had advisorily returned the values as found by the appraiser.

The record before us is unnecessarily detailed and repetitious and in many places contradictory but the testimony may be sufficiently summarized as follows:

G. R. Kirk Co., the importer-plaintiff, was chiefly engaged in the purchase, importation, and sale of Christmas trees; that for the last

12 or 14 years the firm had purchased in British Columbia and vicinity Douglas firs which they imported into this country for Christmas trees and which were sold in California, Chicago and the Middle West, and Texas; that only during the last 4 years had G. R. Kirk Co. been purchasing trees in New Brunswick and Nova Scotia and that the trees there purchased and imported into the United States as Christmas trees were balsams, a much heavier tree than the Douglas firs from British Columbia and with closer set foliage; that these balsams were sold principally in New York, Philadelphia, and Pittsburgh, though some were sold in Washington, D. C., and in Cincinnati and Cleveland, Ohio.

The method used by the plaintiff-importer during the year 1937 (although the testimony in the main is applicable to other years as well) in purchasing, packing, and transporting the Christmas trees imported from New Brunswick and Nova Scotia was testified to for the plaintiffs by J. I. Hollandsworth at the hearing in New York as follows:

Mr. Hollandsworth was employed by G. R. Kirk Co. to purchase the trees for the importer; he went up to New Brunswick in August and September, 1937, and made as many agreements as possible for the sale of trees by the producers of same to G. R. Kirk Co., these agreements being recorded on forms such as are in evidence as exhibit 3; the prices agreed upon were not such as were offered by the producers but by G. R. Kirk Co. and the producers had no compunction from accepting higher prices from competitors; that the prices offered and paid by G. R. Kirk Co. in 1937 were per bale delivered at the roadside 25 cents loose; (that is the number of trees that would constitute a bale of that sized trees), 30 cents tied with twine; 35 cents per bale tied for all bales from one seller in excess of 500 bales; and occasionally an extra bonus of 1 cent per bale, known as Government stumpage, on trees cut from Indian Reservations, this stumpage going to the Indians who cut and hauled the trees at their expense to the roadside; that on October 1, 1937, he returned to New Brunswick to take title to the roadside consignments, each tree of which was inspected by him personally or by inspectors under his supervision hired for the purpose; that to each tree inspected and accepted there was attached a colored tag such as in exhibit 1, each color designating a special size of tree; that the accepted trees were then hauled on trucks to the railroad yard and there finally loaded on the railroad cars for export.

The cost of the twine for baling, bought in Halifax, was approximately 2 cents per bale; cost of affixing tags (exhibit 1), sent from the United States, was approximately $1\frac{1}{2}$ cents per bale; and the cost of hauling from the roadside to the railroad was approximately 7 cents per bale (R. pp. 48 and 58).

There were several competitors to G. R. Kirk Co. in the purchase of trees who, with one possible exception, put a larger number of trees in their bales than did G. R. Kirk Co. Some of these competitors bought the standing trees and at their own expense did the cutting and hauling from the woods.

The witness Hollandsworth further testified that the list of the number of bales bought, the amounts paid and to whom paid, which was contained in pages (exhibit 4) of the affidavit executed by the witness, had been taken from the record of G. R. Kirk Co., but not from the contracts of purchase and sale entered into with the New Brunswick producers, which contracts had been destroyed by the witness soon after completion as being of no further use; that his check stubs did not give the details but that from the amounts he could calculate the price per bale and whether that included the 5 cent bonus paid for deliveries of more than 500 bales by one seller or the 1 cent stumpage bonus paid the Indians for trees cut on Indian reservations. As explained by the witness, this list would seem to confirm the previous testimony as to the prices per bale paid by G. R. Kirk Co.

The foregoing testimony relates entirely to purchases and shipments to the United States of balsam trees produced in New Brunswick but it was testified that these trees were of the same type as those produced in and shipped to the United States for Christmas trees from Nova Scotia.

As to the purchases in and shipments from Nova Scotia by G. R. Kirk Co. there is in evidence (plaintiffs' exhibit 2) an affidavit executed by Roby S. Crandall under date of July 24, 1939, at Bridgewater, Nova Scotia, Canada, in which the said Crandall deposes and says that he resides in Barrs Corners, Lunenberg County, Nova Scotia, and for the last 2 years has been employed by G. R. Kirk Co. of Tacoma, Wash.; that part of his duties with this firm consist of the purchase of balsam trees in the province of Nova Scotia, Canada, and of the shipping of such trees to the United States, and that these trees are of the type and size commonly used in the eastern portions of the United States as Christmas trees.

(2) That during the months of September and October, 1937, he, or agents appointed by him at $4 or $5 per day plus travelling expenses, travelled over Nova Scotia to arrange with farmers and other producers for the purchase of trees and enter into contracts on behalf of G. R. Kirk Co. at the following prices:

> Trees 2½ to 3½ feet high in bundles of 8 trees
> Trees 3½ to 5½ feet high in bundles of 6 trees
> Trees 5½ to 7½ feet high in bundles of 4 trees
> Trees 7½ to 9½ feet high in bundles of 3 trees
> Trees 9½ to 11 feet high in bundles of 2 trees

(a) 35 cents per bundle tied and delivered at side of a road or highway.
(b) 40 cents per bundle tied and delivered to the railroad loaded in freight cars.

(3) That under his supervision during the months of November and December, 1937, G. R. Kirk Co. purchased in Nova Scotia from different suppliers 11,284 bundles of trees, and these trees were actually purchased at the following prices, and that he personally paid, on behalf of G. R. Kirk Co., the amounts specified:

| Bales purchased | Price per bale | Delivery | Condition | Amount |
|---|---|---|---|---|
| 798 | .35 | Roadside | Baled | 279.30 |
| 95 | .30 | Roadside | Baled | 28.70 |
| 390 | .33 | Roadside | Loose | 128.70 |
| 3 | .36 | Roadside | Baled | 1.08 |
| 9,998 | .40 | Loaded in cars | Baled | 3,999.20 |

11,284

(4) That in addition to the above prices he paid $11.70 as the cost of tying the 390 loose bundles into bales, or a cost of 3 cents per bale, and also $65.47 for the hauling of the 1,286 bales from the roadside to the railroad based on a price of 5 cents per bale for an 18-mile haul; that the price of 30 cents for a 95-bale lot was lower than the normal price and was due to the producer, Marcus Broome, having delivered more than the contract with G. R. Kirk Co. called for and there being no desire for the excess; that the price of 33 cents for the item of 390 bales was due to their being delivered loose, said price also being less than the normal price; that also 166 bales of the 9,998 bundles were loaded in the freight cars by G. R. Kirk Co. rather than by the sellers, and an estimated cost of loading such trees into the freight cars of 1 cent per bale, or $1.66, was deducted from the price of 40 cents per bale due the seller.

Omitting certain repetitious statements the affiant Crandall deposed and said:

(5) That the agreements or contracts referred to above were subsequently destroyed by him, but the attached form of agreement is a true copy of such contract; that the trees were purchased from the suppliers under the condition that they be delivered at the roadside or the railroad stations in a loose condition and subsequently baled by the sellers; that when delivery was made the trees were inspected by employees of G. R. Kirk Co., who then attached cardboard grading tags to each tree; that these tags and staples had been purchased by G. R. Kirk Co. in the United States and had been shipped to Nova Scotia by said company; that after the tags had been attached to each tree the person from whom the trees had been purchased tied them into bundles, each containing 8, 6, 4, 3, or 2 trees, dependent upon the sizes as specified above, but that this baling was not paid for separately by G. R. Kirk Co. but was done under the contracts of purchase. However, in one instance, covering the purchase of 390 bales at 33 cents per bale, G. R. Kirk Co. paid for the tying into bundles at the rate of 3 cents per bale.

(6) That during November and December, 1937, trees identical with those bought by G. R. Kirk Co. were purchased in Nova Scotia and shipped to the United States by other dealers, namely J. Hofert, of Los Angeles; R. S. Henniger, of Nova Scotia; W. D. Wright, of Arlington, Mass; Ralph Myshrall, of Arlington, Mass; E. D. Cutting, of South Portland, Maine; Vahlsing Produce Co., of New York; and R. S. Mervine, of Stroudsburg, Pa; that because he purchased such trees during 1937 in competition with these firms and personally observed the shipment of their trees to the United States he was familiar with their methods of purchase during that year; that J. Hofert purchased and shipped to the United States trees which had been tied into the same type of bundles as those purchased by G. R. Kirk Co.; that the trees shipped by the other dealers enumerated above were not tied in bundles of the same type as those received by G. R. Kirk Co. or J. Hofert, but each bundle contained approximately 25 per centum to 100 per centum more trees than a bundle containing trees of corresponding length shipped by G. R. Kirk Co., and some of these firms or individuals purchased growing trees and did their own cutting, baling, hauling, and loading; also, the prices paid by the other dealers referred to above were higher than the prices paid by G. R. Kirk Co., but such differences in price were due solely to the fact that the bundles purchased by said firms contained at least 25 per centum to 100 per centum more trees than the bundles purchased by G. R. Kirk Co., and that if such trees had been purchased as single trees rather than as bundles of trees the two prices would have been the same.

On the foregoing record the plaintiffs rested.

At the second adjourned hearing held before Judge Brown at Detroit, Mich., the defendant called as a witness in its behalf Archie McKenzie, who testified that he was acting appraiser of merchandise at Port Huron, Mich., and had held that position for 2 years; that before that he had been a clerk assisting the appraiser and that in that capacity he had been examining Christmas trees from Canada for about 18 years and that he had passed upon the entry involved in this case; that he had advisorily classified and returned the value of the trees contained in that entry; that during the year 1937 he had passed upon between 50 to 60 carloads of Christmas trees constituting the importations of about eight importers including the importer here, G. R. Kirk Co.; that G. R. Kirk Co. had during the 1937 season brought in at one time anywhere from 1 to 15 carloads.

The witness further testified that during the 1937 Christmas season the prices per bundle shown on the invoices of importers other than G. R. Kirk Co. for trees longer than the 5-foot size was 60 cents per bundle except for the importers Malkamas and LaBar and that that price was, irrespective of the number of trees in the bundle, for the 5-foot up to 12-foot trees; that though there might be some variation

both as to trees and bundles in his view within certain weight limitations of 45 to 70 pounds per bundle the bundles might commercially be easily interchangeable.

At this point counsel for the defendant, Mrs. Bennett, stated that the Government had established that the unit in the wholesale trade is per bundle, irrespective of the number of trees. .

In reply Mr. Tompkins, counsel for the plaintiffs, stated as follows:

Mr. TOMPKINS. It is dependent very largely on the number of trees in each bundle. For instance, trees 5 to 6 feet in length are usually bundled 4 to a bundle, and those 7 to 8, only three; 9 to 10, only two, so it seems to me, and I respectfully submit that if you are contending for values on other importations different from the values specified in these invoices to Kirk & Company, the invoices themselves should be produced which shows the date of shipment. That has a bearing on it, and the locality, and the character of trees also. * * *

It is dependent on the weight and the number of trees as to the price per bundle, and I think without the invoices we are wholly at sea.

Judge BROWN. I think the objection is good. I will sustain the objection.

Mrs. BENNETT. Exception.

By Mrs. BENNETT.

Q. Mr. McKenzie, based upon your examination of the Christmas trees that came into Port Huron from New Brunswick and Nova Scotia during the 1937 season, how did the bundles of the Kirk Company compare in weight and quality with the bundles imported by the other American importers you have mentioned?

Mr. TOMPKINS. That is objected to.

Judge BROWN. That is the same thing.

Mrs. BENNETT. I am asking how they compared, * * *.

Judge BROWN. My ruling amounts to this: That it is too indefinite a matter to bind an importer. Every shipment of Christmas trees would be presumptively a shipment of a different thing, something not comparable in the Tariff sense.

Mrs. BENNETT. That would go to the weight of the evidence, certainly not to its admissibility. This man is an expert and certainly should be permitted to testify.

Judge BROWN. No, I think it would exclude the evidence, and my ruling would cover this, and therefore I sustain the objection to this.

Mrs. BENNETT. Exception.

The witness, McKenzie, was allowed to state, over objection by plaintiffs' attorney, exception being taken to admission, that; based upon his examination of importations of Christmas trees from New Brunswick and Nova Scotia in 1937, the weight of a standard bundle was approximately 60 pounds. The question and answer were then excluded.

Mrs. BENNETT. The question involved in this case is the export value. Now the best evidence of export value is what other American importers paid, as shown by the records which passed through this expert witness' hands, upon which he passed. Now I am asking him, from his knowledge, what was the price that he found other American importers paid for standard bundles during that period.

Judge BROWN. And my ruling is that there is such an inherent difference as a matter of common knowledge in Christmas trees, and in bundles of Christmas trees, that an importer could not be bound by that sort of evidence without a production of the invoices at least, and identification which would show that they were the same, and that is what my ruling means. * * * . A Christmas

tree is a variable thing, and bundles of trees are variable on their face. It is almost inconceivable it could be made into a standard bundle and fixed a unit that way.

Mrs. BENNETT. An expert witness has testified that there is a standard bundle, and Your Honor's ruling excludes the price at which——

Judge BROWN. I didn't take the previous testimony in the case. You say the importer testified?

Mrs. BENNETT. This witness just testified that there is a standard bundle.

Judge BROWN. I excluded the evidence.

Mrs. BENNETT. Exception. That is all.

Mr. TOMPKINS. No questions.

Mrs. BENNETT. The Government offers in evidence Montreal report 2–743, dated December 2, 1937, covering a general investigation of the Christmas tree market in New Brunswick and Nova Scotia, of merchandise such as that here involved, and asks that it be received in evidence as Exhibit number 5.

\* \* \* \* \* \* \*

Mr. TOMPKINS. If Your Honor please, this report, which consists of 26 pages and also a number of exhibits attached, is very voluminous. I therefore desire to make merely the general objections to it on the grounds that the statements therein made are mainly hearsay, that they are not the best evidence, no opportunity being afforded the attorney for the importer to cross examine. In the majority of instances it appears there is no showing in this report, with reference to particular shipments, as to how they were hauled, or about cutting, or tying, or whether they were delivered f. o. b. roadside, or f. o. b. on the railroad, or as to the character of the trees, the foliage, etc., and as incompetent, immaterial and irrelevant in many respects, and I would respectfully ask that the further and more specific objections might be reserved for the privilege of Lawrence & Tuttle, who are the attorneys of record in the case, and who have tried it de novo on the Pacific Coast, and also New York.

Judge BROWN. According to our custom, the exhibit will be marked, and the objection overruled.

Mr. TOMPKINS. Exception.

Judge BROWN. It may be further criticized in your brief. Mark it Collective Exhibit 5.

The Government then rested and both sides submitted.

A review of the record shows that the testimony of the plaintiffs' first witness identified the importer as a one-man concern, G. R. Kirk Co., engaged in the purchase of Christmas trees in Canada, exporting them from there and selling them in the United States; that the importer had been buying Christmas trees from New Brunswick and Nova Scotia for 4 years; that the trees there bought are balsams which are heavier trees with closer set foliage than the Douglas firs purchased in the western provinces of Canada.

Witness further testified that the balsam trees imported from New Brunswick and Nova Scotia were sold in the eastern part of the United States where he personally had sold them in New York and Philadelphia; that the trees came tied in bundles and each tree individually tagged for identification with tags such as illustrative exhibit 1; that there appeared on all invoices covering Christmas trees from any part of Canada the same notation as appears on the invoice at bar,

namely, "Tags and Staples (American Goods Returned)" and that by his instructions tags such as illustrative exhibit 1 were sent to New Brunswick and Nova Scotia; that the tags were of no value to any one but the importer; and that the principal markets in the United States for Christmas trees from Nova Scotia were Philadelphia, Washington, Baltimore, and also Pittsburgh, where they were sold direct to retailers, frequently with the privilege of returning the unsold trees and that the tags were necessary in order to identify the returned trees as belonging to G. R. Kirk Co. Witness further testified that the trees came in bundles containing one size of tree in each bundle and the bundles containing a different number of trees according to size as follows:

2 to 3 feet in length, 8 trees to the bundle;
3 to 4 feet in length; 6 trees to the bundle;
5 to 6 feet in length, 4 trees to the bundle;
7 to 8 feet in length, 3 trees to the bundle;
9 to 10 feet in length, 2 trees to the bundle;
12 feet in length, 1 tree to the bundle.

Further testimony by this witness was excluded because of lack of personal knowledge or is immaterial to the issues here involved.

The testimony of the plaintiffs' witness J. I. Hollandsworth deals altogether with the details of the purchase and sale of Christmas trees in and shipment from New Brunswick. This testimony was admitted on the ground that the trees bought in New Brunswick were the same as the trees bought in Nova Scotia where the shipment at bar originated. However, the admission of this witness' testimony is admissible only on the further assumption that the circumstances of purchase and sale, packing, hauling and loading on the railroad cars, and above all that the prices paid were at least approximately those obtaining in Nova Scotia. This by the affidavit of the plaintiffs' witness Roby S. Crandall is shown not to be the case in several important particulars; as for instance, the prices paid by G. R. Kirk Co., the importer, for Christmas trees in New Brunswick, were f. o. b. roadside, the additional expense of hauling and loading on the railroad cars being borne by the exporter; whereas in Nova Scotia the trees were bought f. o. b. loaded on the cars ready for shipment; and the prices paid in New Brunswick were not the prices freely offered by the sellers but the "take it or leave it" prices offered by the exporter, whereas the prices paid for the trees in Nova Scotia were the prices freely offered to all purchasers by the sellers.

The testimony of the plaintiffs' witness Roby S. Crandall as contained in an affidavit attested at Bridgewater, Nova Scotia, under date of July 24, 1939, sets forth in a straightforward, credible, and intelligible manner the method of doing business in the purchase of Christmas trees in the province of Nova Scotia.

As agent for the plaintiffs he entered into contracts for the purchase of Christmas trees at the prices freely offered by the sellers for delivery f. o. b. loaded in the railroad cars baled and ready for export at so much per bale, the unit of sale. This price for the season of 1937 and which included the shipment at bar was 40 cents per bale, each bale packed with one-sized trees, so many trees to the bale as already set forth in detail. The witness makes no statement as to trees over 11 feet in length. With the inconsequential exception of less than 11 per centum of the total, the 11,284 bales bought by the affiant during the season of 1937 and exported to the plaintiffs in the United States were paid for at the price of 40 cents f. o. b. loaded on the railroad cars ready for export.

For the defendant, the evidence of the witness McKenzie as to the prices paid for Christmas trees from Nova Scotia by other importers having been excluded in default of the invoices, the entire case rests on the report of the special agent at Montreal covering the purchases of Christmas trees by American exporters other than G. R. Kirk Co.

This report covers a large number of purchases in New Brunswick and Nova Scotia, the information having been obtained from various persons named in the report. At the bottom of the first page of the report it is stated that the information received from them was verified so far as stated and the trees referred to were all fir balsams.

Examining this report more in detail it appears that as to most of the transactions there is not sufficiently detailed information to make a proper comparison with the shipment before us. For example in most of the transactions covered in the report the number of trees packed in the bales of various sizes is not mentioned; in other cases where the weights of the bales are mentioned the weights are averaged in such terms as "the bundles will average 70 pounds" or "the bundles will average 60 to 70 pounds." Where a detailed list is furnished as to the number of trees of each size that are packed in a bundle either the size of the trees or the number of trees in a bundle differ from the shipment at bar and, therefore, furnish no ground for comparison. Furthermore, there is no uniformity either as to the sizes of trees packed together or as to the number of trees in each bundle, indicating clearly that there was no such thing as a standard bundle or bale and that each exporter used his own standard. As to prices paid per bundle, as one might expect from the foregoing, there is a wide range, running from 25 cents plus charges for hauling, binding and loading, to as high as 75 cents per bale loaded on the railroad cars, from which divergence it would be impossible to derive any uniform export value. Whatever else this report might be made to prove it certainly does not confirm the Government contention of an export value of 60 cents per bale or bundle.

Practically all the information in the report is hearsay evidence though the agent states that the information was verified. He does not say how, but from some particular instances this verification consisted in checking with contracts of sale shown him by those interviewed. In no case is it stated that he examined an invoice and no copy of an invoice is submitted for consideration.

On the weight of the evidence as a whole we find as facts that the unit of value for the merchandise here involved was a bale, packed as to size of trees and containing the number of trees of the respective sizes as set forth on the invoice and entry covering the shipment at bar, and that the price paid by this importer was 40 cents per bale; and we find as a matter of law that this price of 40 cents per bale is the export value per bale without any addition for the value of the tags which are American goods returned.

Judgment will issue sustaining the claim for value of 40 cents per bale net, as entered, of the so-called Christmas trees in the shipment at bar.