CABINET CRAFTSMEN, INC. *v.* UNITED STATES

No. 7792. — 
Entry No. 791964, etc.

(Decided February 6, 1950)

*Siegel, Mandell & Davidson* (*Samuel T. Siegel, Sidney Mandell,* and *Joshua M. Davidson* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

MOLLISON, Judge: The appeals for reappraisement listed in schedule "A," hereto attached and made a part hereof, are from values found by the appraiser on certain knocked-down furniture frames exported from Italy during the period between August 23, 1939, and

June 3, 1940. Entry was made on the basis of the invoiced values, which the plaintiff contends represent the export value as defined in section 402 (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (d)). The frames, with certain exceptions, were appraised at higher unit values on the basis of cost of production, which is defined in section 402 (f) of the said act. The exceptions, six armchairs covered by a single invoice item, No. 1, in reappraisement No. 140113–A, were appraised on the basis of export value, but at an amount higher than the entered value. It is alternatively contended by the plaintiff, if it should be determined that there was no export value for all of the merchandise involved, that it is dutiable on the basis of cost of production, but at values no higher than the invoiced and entered values.

It was conceded by counsel for the plaintiff, and is, of course, implicit in the position taken by the defendant, that there existed no foreign value for such or similar merchandise within the meaning of that term as defined in section 402 (c), as amended, of the tariff act. First inquiry, therefore, is directed toward the ascertainment of whether an export value for such or similar merchandise existed, and, if so, the amount thereof.

The plaintiff's proof with respect to export value consists of an affidavit and certain exhibits appended thereto subscribed and sworn to before the vice consul of the United States of America at Milan, Italy, by one Maurizio Bettoja. The affidavit and appended exhibits were received in evidence as collective exhibit 1.

In his affidavit Mr. Bettoja identifies himself as the sole proprietor and owner of the exporting firm, Industria Sediame per Esportazione, and states that he had personal knowledge of all commercial transactions entered into by and with the said firm. After identifying the invoices covering the shipments involved herein, the witness states that the prices appearing thereon—

\* \* \* represent the free offering price and true market value of these particular described frames at the time of exportation and that we were and are prepared and willing to sell in the usual wholesale quantities and in the ordinary course of trade, the identical described furniture frames at the prices at which they were sold and invoiced at the Cabinet Craftsmen, Inc. of New York [note — the importer herein].

That part of the above statement which avers the affiant's willingness to sell such frames at the same prices at which they were sold to the plaintiff is, of course, "no proof of market value or price at the time of exportation of the merchandise, as required by the statute." *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States,* 28 C. C. P. A. 19, C. A. D. 118.

Further in regard to the export value, the affiant states:

As an indication of an open and free market I wish to submit the following:

On an invoice to the Cabinet Craftsmen, Inc. consulted [sic] August 23, 1939 [note—presumably the invoice covered by reappraisement No. 140119–A, which corresponds to this description], among other items appears:

Item No. 2788____mirror at an invoice price of Lire 159
Item No. 2798____full sized beds at Lire 336
Item No. 2798____single beds at Lire 300
Item No. 2787____console at Lire 423

These identical items and merchandise were sold for export to the United States to a firm known as the Italian Furniture Frame Corp at identical prices.

The merchandise to the Italian Furniture Frame Corp. appears on invoices consulated June 6th, 1939, August 1st, 1939–September 21st 1939 and September 21st 1939. The prices of the identical articles did not vary either before or after the date of the consultation [sic] of the invoices to the Cabinet Craftsmen, Inc. to wit: August 23, 1939 therefore indicating a steady market value for the merchandise in question prior and subsequent to the date of exportation of the merchandise to the Cabinet Craftsmen, Inc. and as evidence of this fact I am attaching herewith copies of sales of identical merchandise to firms other than the Cabinet Craftsmen, Inc.:

June 5, 1939_____cases 989 and 990
July 31, 1939_____cases 999 to 1003 incl.
Sept. 19, 1939____cases 1011 to 1017 incl.

March 14, 1940 to Jacob Maslow
Cases 1087 to 1090 incl.

Furthermore it is also to be noted, as a free offering price and market value of the merchandise, that in an invoice to the Cabinet Craftsmen, Inc. consulated March 15, 1940 appears among other things item number 3083 table at Lire 383.

On the identical date of consulation I made a sale to Jacob Maslow of New York of the identical item number at the *identical price.*

Toward the close of the affidavit the following appears:

I further swear under oath that no understanding or agreement written or otherwise exists between our firm and the Cabinet Craftsmen, Inc. of New York whereby we are to limit, restrict or confine our sales to said firm as our sales to the Cabinet Craftsmen, Inc. of New York are freely made with no restrictions whatever.

I further swear under oath that I am in no way interested financially or otherwise with the Cabinet Craftsmen, Inc. of New York.

It is noted that the affidavit is dated July 3, 1946, and that the two paragraphs above quoted are in the present tense. The shipments involved were made in 1939–1940, and it is questionable whether the affiant intended the statements to reflect the 1946 situation or the 1939–1940 situation.

On behalf of the defendant there were offered and received in evidence as collective exhibits 2 to 9, inclusive, certain reports of a treasury representative. A perusal of these reveals a picture of the exporter's business which is not compatible with the free offer of such merchandise averred in the affidavit, collective exhibit 1.

According to the reports, particularly collective exhibits 2 and 3, being reports signed by Francis X. DiLucia, treasury representative, and dated March 30, 1940, the information in which is therein said to have been obtained from the exporter's bookkeeper, Vincenzo Falanga, and the owner, Maurizio Bettoja (the affiant of collective exhibit 1), the latter was the son-in-law of Jacob Maslow and the brother-in-law of Louis Maslow, who, it appears, owned, operated, controlled, or had at the time of exportation of the merchandise involved an interest in the Italian Furniture Frame Corp. mentioned in the affidavit, collective exhibit 1. It also appears that he was the brother-in-law of Jean Maslow, a member of the firm of Cabinet Craftsmen, Inc., the importer in the cases at bar.

The reports indicate that the entire output of the exporter was shipped only to these firms or to firms in which members of the Maslow family were interested. Under these circumstances, I am of the opinion that the burden was on the plaintiff, if it hoped to establish the invoice prices as the correct values of the merchandise, to go forward with the evidence and establish by competent proof that such or similar merchandise was actually freely offered for sale at such prices to all who cared to buy, and not only to members of one family or their associated firms. The instances of sales cited in the affidavit (collective exhibit 1) as examples of "an open and free market" are all within the latter orbit.

I conclude, therefore, that the plaintiff has failed to establish the existence of export value for all of the items involved except the six armchairs referred to in the first paragraph of this opinion. These latter pieces, it appears, were appraised on the basis of export value of similar merchandise, and, as the plaintiff has failed to offer evidence of the incorrectness of such values, I hold that the statutory presumption in favor of the appraised values thereof has not been overcome.

As it was conceded by counsel for the plaintiff and is implicit in the position taken by the defendant that there existed no United States value, as defined in section 402 (e) of the tariff act, as amended, for the remainder of the merchandise involved, next inquiry must be made as to the correct value of the merchandise on the basis of cost of production, which is defined in section 402 (f) of the tariff act.

The plaintiff's evidence with respect to statutory cost of production consists of the affidavit of Mr. Bettoja, collective exhibit 1, who therein states his familiarity with the costs, expenses, and profit entering into the items in question. To his affidavit are attached certain sheets showing figures for various elements of cost of production with respect to each item here involved, and which figures the affiant states were taken from his official books of record and "con-

form with its registrations." It should be noted that these sheets appear to be duplicates of sheets attached to each invoice.

Examination of such figures indicates that in each case the total cost of production shown for each item corresponds exactly with the invoiced and entered value for such item.

Reference to the treasury representative's reports, collective exhibits 2 to 9, inclusive, indicates that the declared production costs were found to be in accord with the cost records, invoice books, books of account, and other records of the exporter. It appeared, however, that such records and books did not reflect the true situation with respect to the costs, expenses, and profit involved.

For example, it appeared that the total value declared in the consular invoices for all merchandise shipped in 1939 was 375,200.90 lire, plus packing of 12,341 lire, or a grand total of 387,541.90 lire (collective exhibit 3, p. 3). An examination of the books of the manufacturer revealed the cost of materials attributable to the said shipments to be 81,000 lire (collective exhibit 3, p. 4); labor cost, 216,300.50 lire (collective exhibit 3, p. 5), or a total for costs of materials and fabrication of 297,300.50 lire. General expenses were revealed to be 103,000 lire (collective exhibit 3, pp. 5 and 6), and packing was 12,341 lire (collective exhibit 3, p. 3). The total of these three items, which would correspond with paragraphs (1), (2), and (3) of the elements of the cost-of-production statute, section 402 (f), *supra*, equals 412,641.50 lire, which total does not include the item of profit which the statute fixes at not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) referred to above, but the said 412,641.50 lire is nevertheless higher than the total declared invoiced value.

I am satisfied, therefore, that the invoiced values and the cost figures supplied by Mr. Bettoja are unreliable, and, since these constitute the plaintiff's sole evidence of cost of production, that the plaintiff has failed to establish values for the merchandise, based upon the cost of production thereof, different from the values returned by the appraiser, which were presumptively correct.

On the record before me I find as facts:

(1) That the merchandise involved consists of knocked-down furniture frames exported from Italy during the period between August 23, 1939, and June 3, 1940.

(2) That at the time of exportation of the merchandise involved in each of these cases there was no merchandise such as or similar thereto sold or freely offered for sale for home consumption in Italy.

(3) That at the time of exportation of the six armchairs identified by the item number 1 covered by the invoice and entry involved in reappraisement No. 140113–A the market value or price at which such or similar merchandise was freely offered for sale to all purchas-

ers in the principal markets of Italy, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was the appraised value thereof.

(4) That with respect to the items of merchandise involved in these cases other than those specified in finding (3) above, there was at the time of exportation of such merchandise no merchandise such as or similar thereto freely offered for sale in Italy for exportation to the United States.

(5) That with respect to the items of merchandise involved in these cases other than those specified in finding (3) above, there was at the time of exportation of such merchandise no merchandise such as or similar thereto sold or freely offered for sale in the principal market of the United States.

(6) That with respect to the items of merchandise involved in these cases other than those specified in finding (3) above, the sum of the elements covered by paragraphs (1), (2), (3), and (4) set forth in section 402 (f) of the Tariff Act of 1930 is in each instance the value found by the appraiser.

I conclude as matters of law:

(1) That the proper basis of value for the six armchairs identified by the item number 1 covered by the invoice and entry involved in reappraisement No. 140113–A is export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, and that such value is the appraised value thereof.

(2) That with respect to the remainder of the items of merchandise involved in these appeals for reappraisement the proper basis of value is cost of production, as defined in section 402 (f) of the same act, and that such value is the appraised value in each instance.

Judgment will issue accordingly.