(A.R.D. 235)

AMERICAN BILTRITE RUBBER CO., INC., BOSTON WOVEN HOSE & RUBBER DIVISION *v.* UNITED STATES

Entry Nos. 2785; 4374.

Second Division, Appellate Term

(Decided February 7, 1968)

*Walter E. Doherty, Jr.*, for the appellant.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Brian S. Goldstein*, trial attorney), for the appellee.

Before RICHARDSON and LANDIS, Judges, and OLIVER, Senior Judge

RICHARDSON, Judge: This application for review was filed by the importer, seeking a review of the decision and judgment of a trial judge sitting in reappraisement in *American Biltrite Rubber Co., Inc., etc.* v. *Unted States*, 57 Cust. Ct. 664, R.D. 11233, and holding that export value as defined in 19 U.S.C.A., section 1401a(b) (section 402 (b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) and represented herein by the appraised values is the proper dutiable value of merchandise exported from West Germany.

The merchandise the subject of the two appeals before the court consist of mixing mills of West German manufacture. The invoice description and prices (in U.S. dollars) of the merchandise inclusive of all packing are as follows:

R63/291—Entry No. CE 2785

|  |  | Invoice Unit Price or Value | Invoice Totals |
|---|---|---|---|
| 1 Group of (2) mills |  | $37, 520 | $37, 520 |
| Flood lubrication |  | 580 | 580 |
| Gears 2″ Dia. pitch, etc. |  |  |  |
| ea. pair |  | 712 | 1, 424 |
| Grooving rear rolls | ea. | 385 | 770 |
|  |  |  | 40, 294 |
| 15% deduction |  |  | 6, 044 |
|  |  |  | 34, 250 |

R63/292—Entry No. CE 4374

|  |  | Invoice Unit Price or Value | Invoice Totals |
|---|---|---|---|
| 1 Group of (2) mills |  | $37, 520 | $37, 520 |
| Flood lubrication |  | 580 | 580 |
| Gears, 2″ Dia. pitch, etc. |  |  |  |
| ea. pair |  | 712 | 1, 424 |
| Grooving rear rolls | ea. | 385 | 385 |
|  |  |  | 39, 909 |
| 15% reduction |  |  | 5, 986 |
|  |  |  | 33, 923 |

Entry was made by the importer-appellant at the invoice unit prices less a 15 percent discount, net packed; and appraisement was

returned on the basis of export value as defined in section 1401a(b) at the invoice unit values, net packed. No question is raised as to the basis of value which the parties agree is export value as defined above. At issue is the propriety of the alleged 15 percent discount shown on the invoices covering the merchandise at bar. Appellant contends that this item is in fact a discount which should be allowed off the export value of the merchandise at bar. And the respondent contends that appellant failed to prove an export value within the meaning of section 1401a(b) different from that returned in the appraisement.

The record before the judge below consisted of the official papers and an affidavit of an officer connected with the manufacturer and seller of the involved merchandise (plaintiff's exhibit 1). The affiant in exhibit 1 states that during the period of exportation of the merchandise at bar similar merchandise was not sold by his firm for home consumption in Western Germany; that his firm (Berstorff) gave a 15 percent discount to the appellant, "taking into account (among other things) the fact that they ordered a total of 9 mills from us, and the fact that competitors of ours would customarily offer an equivalent discount for similar sales"; that his firm grants equivalent discounts in its sales of products for home consumption, as do its competitors; that at the time in question Hanover, Germany, was the principal market in Western Germany for the sale of such and similar merchandise for exportation to the United States; and that during the period in question, while his firm did not make any actual sales of such or similar merchandise to anyone else for exportation to the United States or receive any order for the same, it was willing to sell to all persons for exportation to the United States at the same prices and terms as given to the appellant. A price list is attached to the affidavit in exhibit 1 in which prices for various articles including those herein involved are shown in deutsche marks.

On this record the trial judge concluded that the evidence failed to establish that the merchandise at bar was freely sold at the discount price claimed by appellant, or to establish appellant as a selected purchaser at wholesale, and accordingly sustained the appraised values. Of plaintiff's exhibit 1 the trial judge said:

... The affidavit does not prove the mills were "freely sold" at the discounted price. It does not deny that others less favored would have received a smaller discount or none. It is completely vague as to what any of them would have had to do to earn the 15 per cent discount, plaintiff's qualifications besides volume of buying being concealed behind the words "among other things." Plaintiff argues in its brief that the 15 per cent was a quantity discount for purchase of a "usual wholesale quantity" of nine or more. This reads into the affidavit what it does not say. Not only is the discount granted for purchasing nine mills "among other things," but it is not stated what quantity plaintiff

ever purchased in one transaction or in any particular period of time. There is nothing in the invoice or affidavit (including the pricelist) to indicate that a discount was established for purchasing any particular quantity of mills or more.

Appellant has assigned as error here the trial judge's findings which sustained the appraised values and rejected the claimed values. And in its brief appellant contends first, that the appraisement is "severable", and second, that appellant has made a *prima facie* showing that the appraisement was incorrect and that the merchandise should have been appraised as entered.

With respect to appellant's first contention, it is noted that the trial judge expressly excluded from his determination any consideration as to the mechanics of the appraisement or its claimed severability. And no assignment of error has been lodged by appellant against such exclusion. Consequently, we are foreclosed here from reviewing the propriety of the trial court's action with respect to that phase of the case.

With respect, however, to the appellant's second contention, we are of the opinion that the trial judge reached the proper conclusion on the meager evidence adduced by appellant below. Section 1401a(b) reads:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the *usual wholesale quantities* and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States. [Emphasis added.]

It is clear from a reading of section 1401a(b) that an essential element in the proofs tendered by a proponent of export value must be the establishment of the *usual wholesale quantities* in which imported merchandise is sold or offered for sale at a given price. The affidavit comprising plaintiff's exhibit 1 is clearly lacking in evidence of the usual wholesale quantities in which the involved merchandise was sold at the alleged discount price. The quantity associated in exhibit 1 with appellant's transactions, namely, 9 mills, seems to be a cumulative figure. And the price paid by appellant therefor is conditioned upon other circumstances which are nowhere revealed in the affidavit. The language "among other things" appearing in exhibit 1 is not informative, and leaves something more to be desired by way of explanation of such other criteria influencing the sale price.

Then too, it is not clear as to whether the 9 mills referred to in the affidavit include the mills undergoing reappraisement herein as well as others not before the court. If the quantity mentioned in exhibit 1 does include the merchandise before the court then the 9 mills quantity could not properly qualify as a "collateral" standard by means of which to ascertain the usual wholesale quantity *apropos* to the reappraisement of the merchandise at bar. And in any case, the ambiguity in the affidavit on the matter of quantity must be resolved against appellant who carries the burden of proof of such matters.

The affidavit in question also fails to establish that the alleged discount price was "freely offered" within the meaning of section 1401 a(b). At best exhibit 1 indicates a "willingness" on the part of the manufacturer to sell the mills at the prices given the importer-appellant. However, the price list attached to exhibit 1 contains no evidence of the prices given to the appellant. The appellant's counsel points out in his brief that the list prices (when deutsche marks are converted to dollars at the rate of 4.20 to one) are equal to the invoice unit prices which, of course, do not reflect the prices to appellant, but are corroborative of the appraised values. On this state of the record it is settled law that the mere "willingness" to sell at the claimed prices, unaccompanied by price lists or evidence of overt communication with prospective customers, is not substantial or competent evidence of market value. *Transatlantic Shipping Co., Inc., et al.* v. *United States*, 28 CCPA 19, C.A.D. 118; *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 877, Reap. Dec. 5196.

Thus the record before us is devoid of any evidence tending to rebut the presumption of correctness attaching to the appraised values. We find no error in the findings and conclusions of the trial court. Consequently, the judgment of the court below is affirmed.

Judgment will be entered accordingly.