(R.D. 11686)

MAJESTIC ELECTRONICS, INC. v. UNITED STATES

Entry No. 111121, etc.

(Decided December 10, 1969)

Stein & Shostak (Theophilus B. Audett) for the plaintiff.

William D. Ruckelshaus, Assistant Attorney General (Brian S. Goldstein, trial attorney), for the defendant.

Wilson, Judge: The above reappraisement appeal covers 10 entries. The imported merchandise was manufactured by Brentwood Wig. Manufactory, Ltd. (hereinafter called Brentwood Wig) of Kowloon, Hong Kong. Between June 9, 1964 and July 11, 1964, both dates inclusive, the involved goods were exported to Los Angeles where they were entered between June 10, 1964 and July 13, 1964.

The merchandise under consideration was appraised on the basis of constructed value which is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165. Plaintiff contends that export value as defined in section 402(b) of the above mentioned amended tariff act is the proper basis for appraisement, and alternatively, the constructed value as provided in section 402(d) of said amended tariff act if applicable "is substantially less than the appraised value." (R.2.) Defendant contends that the proper basis for valuation is constructed value and that the appraised values represent the correct constructed values.

It is not disputed that the imported merchandise does not appear on the final list published by the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521, and the court so finds. The merchandise is therefore properly subject to appraisement under the new valuation sections set forth in the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

The plaintiff called one witness and introduced five documents received in evidence as exhibits 1 to 5. The defendant offered in

evidence two Treasury agents' reports which were received as exhibits A and B. Two newspaper articles were marked exhibits C and D for identification but were not received in evidence. The oral and documentary evidence will be referred to *infra* as deemed necessary. The official court papers were received in evidence without being marked.

Herman Krissman, called by the plaintiff, testified that he is the executive vice president of Brentwood Hair Products, formerly known as Majestic Electronics, Incorporated, hereinafter referred to as Majestic; that Majestic's principal business is the importation of wigs and other hair products for distribution in the United States; that the name of the corporation was changed in 1967, but it is the same corporation; that he has been buying and selling wigs since September 1963. The witness showed himself to be familiar with all phases of the human hair industry.

Under cross-examination Krissman testified that when in Hong Kong he visited other manufacturers and compared their prices with Brentwood Wig prices, before he purchased the involved merchandise, during the time involved, as well as shortly after, in 1964; that three manufacturers he mentioned made similar merchandise according to his specifications; that Majestic had no written agreement with Brentwood Wig but purchased by means of purchase orders. He stated that he wrote a letter of inquiry in 1966 to ascertain from various Hong Kong manufacturers how they figured their overhead cost but was unable to receive any information. He also talked to such firms and stated that he spoke to George Au of Regina Hair Products, Franklin Tsu of R & D Manufacturing, and Sheba of Sheba Wigs. (R. 25 and R. 42.)

Krissman stated that the basis for his knowledge of what netting was used by Brentwood Wig in the manufacture of the imported merchandise is the fact he saw it, felt it, and saw invoices showing where the users bought it. The witness testified he was present many times when the netting was used; that he is familiar with the suppliers of hair to the exporter and named Van Yee [Van Yee Trading Company is mentioned in exhibits 3, 4, and sub-exhibits E–1 and E–3 of defendant's exhibit B], as the supplier of about 80 percent of hair in the Hong Kong market. He said that Majestic owned no stock in Brentwood Wig. He saw the latter's minute book. He saw no stock certificates issued to Majestic.

Plaintiff's exhibit 1, sworn to before the Vice Consul of the United States in Hong Kong on July 19, 1968, is the affidavit of Edmond C. W. Ng, vice president of Brentwood Wig from November 1963 to December 1964 in which he alleges: that by virtue of his duties and responsibilities in that capacity he was fully and personally familiar

with the business operations of that firm and with the circumstances relating to ownership and control of said firm; that prior to November 1963 Richard F. Poncher was president of plaintiff; that no stock was ever issued to Poncher; that neither Poncher nor Majestic ever exercised any control over the pricing policies of the exporter, and that prices of all wigs and other human hair products sold to Majestic were fixed as a result of arm's length negotiations.

The affiant in exhibit 1 also states that Brentwood Wig sold its entire production to Majestic, and that no sales or offers were made to other purchasers; that as vice president, it was his duty and responsibility to familiarize himself with prices of other manufacturers of wigs and human hair products in the Hong Kong area and that he was familiar with such prices; that the prices at which Brentwood Wig sold its products to Majestic from November 1963 to December 1964 were in line with and closely comparable to the prices charged by other manufacturers of wigs and human hair products for articles of similar construction and quality; that Brentwood Wig produced approximately 50 percent of all wigs manufactured in the Hong Kong area during the period from November 1963 until the last week of October 1964 at which time Brentwood Wigs production stopped, but sales of stock on hand continued after that date.

Plaintiff's exhibit 2, sworn to before a notary public in Los Angeles, California, on April 30, 1968, is the affidavit of the aforementioned Mr. Ng in which he asserts that he was the vice president of Brentwood Wig from November 1963 to December 1964; that by virtue of his duties and responsibilities in that capacity, he is fully and personally familiar with the business operations of that firm and with the cost of producing the human hair products manufactured by his firm during said period; that during said period his firm sold human hair products to plaintiff.

Plaintiff's exhibit 3 is a sheet marked "Computations Using Van Yee Quotations." It refers to Van Yee Trading Company hereinabove stated to be mentioned in several exhibits. Exhibit 3 allegedly shows constructed value data based upon figures in Hong Kong and United States dollars, sub-exhibit F of defendant's exhibit B.

Defendant's exhibit A is a report dated October 30, 1964 in which the customs representative makes certain statements concerning conversations with Mr. Poncher of Majestic regarding ownership of stock in Brentwood Wig from which the customs representative draws certain conclusions. He also attaches several documents without reference to them, neither of which mention Majestic or any of its personnel.

Defendant's exhibit B is a report dated August 26, 1964, in which the same customs representative alleges interviews on various dates [not specified] with Mr. Ng Yuk Chor, "Director, Brentwood Wig

Manufacturing Co. Ltd." He states that information was obtained and verified to the extent indicated from the business records of the company. He attaches sub-exhibits A through C. Sub-exhibits A and B are copies of the official registration respectively of Walter Company and "Brentwood Wig Manufactory Limited." Mr. Eddie K. W. Au is shown as the principal owner of both companies. The report states that Majestic is the firm exclusively importing all shipments from Brentwood Wig, which consists of various types and styles of handmade and machine-made wigs, and other related human hair items such as ponytails and turban wigs.

It is also stated by the customs representative that he interviewed the managers of Regina Hair Products Factory and Wah Hing Co., two other firms, regarding the profit realized by those firms on sales to the United States and was informed that they operate on a minimum of 15 percent profit.

Mr. Krissman was recalled in rebuttal and testified that he was associated with Mr. Poncher in Majestic; that Ng [Ng Yuk Chor—see sub-exhibit C-1 of exhibit B] was a director and stockholder in Brentwood Wig but is *not* Edmond C. W. Ng (R. 53) who was vice president of Brentwood Wig.

Krissman testified that he knew the human hair markets and manufacturing costs throughout 1964.

A comparison of prices for bleached and dyed human hair, double drawn, for various shades and sizes in sub-exhibit E-1 of exhibit B, "Quotation" by Van Yee Trading Co., with the prices shown in plaintiff's exhibit 5 which is referred to in exhibit 4, an application for commercial letter of credit in favor of Van Yee Trading Company for the account of Brentwood Wig Manufactory, Ltd. shows that the quotation prices are *higher* than the *actual* prices to Brentwood Wig. The total price to Brentwood Wig is shown as HK$127,280 in exhibit 5, which agrees with the price by Van Yee Trading Company in exhibit 4. While the letter of credit was opened on October 18, 1964, the prices therein relate to the prices in existence prior to October 1, 1964 at which time there was a rise in prices. (R. 77.) Exhibit B at page 1 asserts that the customs representative examined all of the filed copies of invoices of Brentwood Wig covering wigs shipped to Majestic and that the record of payments was also carefully examined, and at page 3 he asserts that "There were no discrepancies noted in the record of payments."

It is plaintiff's contention that the record establishes an export value under section 402(b) of the Tariff Act of 1930 as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, for the imported merchandise. The defendant contends that plaintiff failed in its proof.

*If* plaintiff has established an export value, *supra*, it takes precedence over an appraisement under constructed value, *supra*. *Omni Products Corp. et al.* v. *United States*, 58 Cust. Ct. 675, 680, R.D. 11291 (1967). In such event the appraisement on the basis of constructed value would be overcome, and ineffectual by statute. Section 402(a) (1) (3).

The record establishes that Brentwood Wig sold its entire stock to Majestic, an exclusive purchaser, and made no sales or offers to other United States purchasers (R. 23, 24), page 1 of defendant's exhibit B, sub-exhibit C-1 part of exhibit B; that the prices to Majestic were in line with prices of Beauty Wig, Fashion Wig and Regina Hair, other manufacturers in Hong Kong in 1964 of merchandise similar according to Majestic's specifications, plaintiff having purchased from two of them. Furthermore, Brentwood Wig prices to Majestic were in line with and closely comparable to prices charged by other manufacturers of wigs and human hair products for articles of similar construction and quality, page 1 of exhibit 1, which is the affidavit of Edmond C. W. Ng, vice president of Brentwood Wig. The customs representative states that he examined all invoices of Brentwood Wig to Majestic and record of payments (page 1 of exhibit B), and stated: "There were no discrepancies noted in the record of payments," page 3 of exhibit B; the prices of Brentwood Wig to Majestic were arranged as a result of arm's length negotiations and Majestic did not exercise control over Brentwood, page 1 of exhibit 1.

It thus appears that the entire output of hair products by Brentwood Wig as sold to Majestic were freely offered sales in the ordinary course of trade to one selected purchaser at wholesale at prices which were in line with other manufacturers' prices. At page 2 of exhibit B, it is asserted that Mr. Ng Yuk Chor, a director in Brentwood Wig, stated that *if* the exporter herein were permitted to sell to other United States purchasers, "the price would be considerably higher" than the prices to Majestic. That statement is highly speculative, indefinite and uncertain, and is the alleged statement by a person whose duties with Brentwood Wig are not shown of record. His qualifications, if any, to so state are not disclosed. He is not *the* Mr. Ng, Edmond C. W. Ng, who executed the two affidavits, exhibits 1 and 2, who was vice president of Brentwood Wig, whose duties and qualifications are established by the record and whose familiarity with Brentwood Wig's business is explicitly stated in said affidavits. The statements and/or conclusions made by Ng Yuk Chor are *less* credible and of *less* probative weight than are the statements in the two affidavits sworn to by Edmond C. W. Ng.

The most that may be stated is that the exporter indicates a "willingness" to sell at undisclosed prices to other United States purchasers in unknown quantities to unnamed persons. This is *not* substantial or competent evidence and therefore cannot establish a market value,

*American Biltrite Rubber Co., Inc., Boston Woven Hose & Rubber Division* v. *United States,* 60 Cust. Ct. 946, A.R.D. 235 (1968), affirming *American Biltrite Rubber Co., Inc., Boston Woven Hose & Rubber Division* v. *United States,* 57 Cust. Ct. 664, R.D. 11233 (1966), and citing *Transatlantic Shipping Co., Inc., et al.* v. *United States,* 28 CCPA 19, C.A.D. 118 (1940) ; *Golding Bros. Co., Inc.* v. *United States,* 6 Cust. Ct. 877, R.D. 5196 (1941).

See also *United States* v. *Traders Paper Co. et al.,* 14 Ct. Cust. Appls. 293, T.D. 41909 (1926), where the court stated : "Evidence of a hypothetical market, or what a seller would do if confronted by conditions that do not exist, surely should not control over evidence of actual market conditions." Note *United States* v. *Procter & Co.* (*Hammacher-Schlemmer & Co.*), 15 Ct. Cust. Appls. 373, T.D. 42564 (1928), citing *Traders Paper Co. et al., supra.* Note also *Cabinet Craftsman, Inc.* v. *United States,* 26 Cust. Ct. 690, R.D. 8001 (1951), affirming *Cabinet Craftsman, Inc.* v. *United States,* 24 Cust. Ct. 534, R.D. 7792 (1950).

It appears from the record that Brentwood Wig produced approximately 50 percent of all wigs manufactured in Hong Kong during the involved period, page 2 of exhibit 1. This is supported by the customs representative's report, exhibit B, page 6, wherein he states :

> "Brentwood Wig Manufacturing Co. Ltd., exports in such great quantities to the United States (about 300 pcs. hand-made wigs, 900 pcs. machine-made wigs and 500 pcs. other wig items per week regularly), so that the general expenses cannot be compared with any other exporter of such or similar merchandise. The large quantities involved preclude comparison. * * *"

Accordingly, the sales by Brentwood Wig may be considered as sales in the ordinary course of trade under the decisions in *Chr. Bjelland & Co., Inc.* v. *United States,* 52 CCPA 38, C.A.D. 855 (1965), and *Lockwood & Freidin* v. *United States,* 58 Cust. Ct. 622, R.D. 11273 (1967), affirmed *United States* v. *Lockwood & Freidin,* 61 Cust. Ct. 573, A.R.D. 241, 287 F. Supp. 283 (1968). In the *Bjelland* case *supra,* the court stated, page 46 :

> "* * * The evidence tends to substantiate that appellant is the largest single importer of the items at bar, and the trade conditions and provisions under which it has done so have existed for some time. Accordingly, we do not find that the manner of doing business here to be outside the 'ordinary course of trade' or to require the export value to be based on actual sales or offers thereof by *others* in the industry. *United States* v. *Acme Steel Co.,* 51 CCPA 81, 87, C.A.D. 841." [Emphasis quoted.]

The defendant's brief page 24 cites the case of *Inter-Maritime Fwdg. Co., Inc.* v. *United States,* 51 Cust. Ct. 529, 536, A.R.D. 162 (1963), which also involved, as here, a selected purchaser. The court there

stated that evidence of the manner in which one exporter conducts its business does not necessarily establish what is normal or usual in the trade under consideration and that the practices of others engaged in the same class of trade are relevant and material in respect to the ordinary course of trade. The appellate court in *Bjelland, supra*, stated that the term "ordinary course of trade" as it relates to the class or kind of merchandise, was narrowed somewhat in the said *Inter-Maritime* case which relied on *Chr. Bjelland & Co.* v. *United States*, 45 Cust. Ct. 435, R.D. 9753 (1960). There the merchandise consisted of brisling sardines and kipper snacks and the appellate court stated that there was no evidence "beyond those two types of fish products; to base a decision on a class which includes all kinds or types of fish would be to import into the evidence facts which are just not present." That court also stated (52 CCPA at page 45) the following which immediately precedes the above quoted excerpt from 52 CCPA pages 45–46:

> "* * * While an entire industry may normally do business in the same manner, a choice of a convenient manner of doing business at some variance with the others cannot exempt the parties from the force of section 402(b). This is particularly the case where, as the Customs Court correctly analyzed the evidence, the business of appellant and the exporters represents a substantial portion of the industry sales in the kind of merchandise at bar, and thus represents a substantial manner of doing business."

The defendant's sub-exhibit G of exhibit B is an export price list of Regina Hair Products Factory of wigs of 100 percent human hair, hand double knotted on English foundation [Nottingham-made of silk] netting, fitted with elastic band and wiglets and ponytails in colors, "as per our colour chart. Special colours to order at extra charge of 10% to above prices." The record does not specifically show whether the above items are of the same class or kind or such or similar to the imported items. In view of the foregoing, this court agrees with the appellate court in *Bjelland, supra*, that "* * * we do not find that the manner of doing business here to be outside the 'ordinary course of trade' or to require the export value to be based on the actual sales or offers thereof by *others* in the industry." [Emphasis quoted.] This applies even though the trade conditions between Brentwood Wig and Majestic were of short duration [from September 1963 (R.5), or from November 1963 (page 1 of exhibit B), to October 1964 or after said date (page 2 of exhibit 1)] which nevertheless constituted their *entire* relationship of seller and buyer.

The defendant's sub-exhibit G part of exhibit B is a price list issued by Regina Hair Products Factory of Honk Kong which bears the date of February 26, 1964 and contains the notation "U.S.A. market less

20%." The defendant is bound by such statement. Plaintiff's brief page 17 states that if Regina's prices are average, as the Brentwood Wig prices were for assorted colors, and if the Brentwood Wig prices are discounted by 20 percent, the latter prices would be $25 U.S. for hand knotted wigs compared with items 300 and 300A, while Regina would be $26.56; that handmade wiglets compared with item 1006 (should be 1000) would be $7 while Regina would be $6.13, and that ponytails compared with item 1008 would be $7.50, while Regina would be $7.76. Plaintiff also points out that when it is considered that Brentwood Wig had an assured market for its entire production, thereby eliminating expenses, and that Brentwood Wig shipments average 1700 pieces per week regularly (defendant's exhibit B, page 6), while Regina's price list prices are applicable to purchases of less than 300 pieces, that the slight differences are not such as to indicate that Brentwood Wig prices to Majestic do not fairly reflect market value.

Majestic advanced substantial funds to Brentwood Wig in advance of actual shipment thus providing the latter with capital without charging interest. Under similar circumstances, sales to an exclusive purchaser reflected value notwithstanding the sales prices were slightly below prices of other producers. *Lockwood & Freiden* v. *United States, supra.*

Production costs, general expenses and profit involved in sales for export may properly be considered in ascertaining whether or not sales to a selected purchaser, fairly reflect market value. *United States* v. *Acme Steel Company,* 51 CCPA 81, C.A.D. 841 (1964) ; *J. L. Wood* v. *United States,* 58 Cust. Ct. 682, 687, R.D. 11292 (1967).

Defendant's exhibit B, page 6, asserts that Regina Hair and another firm "operate on a minimum of 15% profit." The affidavit of Edmond C. W. Ng dated April 30, 1968, plaintiff's exhibit 2, shows that Brentwood Wig prices in Hong Kong dollars to Majestic are as follows:

| Item | Cost of materials, fabrication and other processing | General expenses | Packing | Profit | Total | Percentage of profit on total* |
|---|---|---|---|---|---|---|
| 300, 300A | 69. 70 | 6. 00 | 2. 00 | 37. 30 | 115. 00 | 32+ |
| 500 | 23. 75 | 6. 00 | 1. 50 | 29. 00 | 60. 25 | 48+ |
| 1000 | 20. 30 | 5. 00 | 1. 00 | 16. 70 | 43. 00 | 38+ |
| 1008 | 22. 10 | 2. 00 | . 80 | 18. 10 | 43. 00 | 42+ |
| Model A | 9. 15 | 2. 00 | . 60 | 4. 05 | 15. 80 | 25+ |

*As calculated by the court.

NOTE: Item No. 100, imported herein, was entered and appraised at the same value and is not included in the foregoing schedule.

It will be noted that Brentwood Wig profit substantially exceeds the above 15 percent of profit of other Hong Kong producers even when including packing charges in the calculations. Therefore, the prices by Brentwood Wig to Majestic fairly reflect the market value of the merchandise. This is contrary to the customs representative's calculations which allege that the profit varies from less than 1 percent to 22½ percent. (Page 6 of exhibit B.)

Defendant argues that plaintiff should have offered substantial evidence to support its claim that Brentwood Wig's sales to Majestic conform to conditions and practices of others. This argument does not negate the fact of short but entire business conduct between the seller and buyer for the entire production. This fact was substantiated by defendant's exhibit B, page 6. Moreover, as hereinbefore indicated, the sales to Majestic by Brentwood Wig represented about 50 percent of the entire Hong Kong trade. The sales by Brentwood Wig to Majestic were in the ordinary course of trade and in wholesale quantities. The price to Majestic fairly reflected the market value during the times of export and under the circumstances herein involved. The prices to Majestic are within the realm and line of prices by others and hence are fairly reflective of market value. The prices paid were actually paid and verified from the exporter's books and records by the customs representative, who stated, page 3 of exhibit B, that there were no discrepancies noted of payments.

Edmond C. W. Ng, vice president of Brentwood Wig, in his affidavit, exhibit 2, asserts that by virtue of his duties and responsibilities in that capacity, he is fully and personally familiar with the business operations of that firm and with the cost of producing the human hair products manufactured by said firm and he furnishes the costs as reflected from records *kept under his supervision*, which records were made in the regular course of business. These are statements of personal knowledge of facts over *which he had access and control*. In *Ercona Camera Corp. et al.* v. *United States*, 54 Cust. Ct. 675, 679, R.D. 10989 (1965), aff'd 56 Cust. Ct. 811, A.R.D. 207 (1966), the affiant in an affidavit did *not* have access to books and records and the court gave little probative value to it in considering cost of production or constructed value.

Defendant contends that the affidavit, exhibit 2, is entitled to no weight and is insufficient to establish *prima facie* that the claimed values fairly reflect market values, citing *Descoware Corp.* (*Westland*) v. *United States*, 58 Cust. Ct. 698, R.D. 11297 (1967). That case involved *cost of production* as defined in section 402a(f), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, and the evidence did *not disclose that the exporter's books and records were kept by or under the supervision of*

*an affiant.* The above statute does *not* provide for evidence as to whether sales fairly reflect market value. The *Descoware* case is *not* controlling in the instant case.

The facts adduced in the case at bar, with respect to plaintiff's primary contention, warrant the conclusion that plaintiff has established the elements of proof of an export value as defined in section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, *supra*. The plaintiff therefore, "established its case" (defendant's brief, page 20).

Accordingly, it is not deemed necessary to pass upon the alternate claim of plaintiff concerning the question of constructed value, although all of the evidence has been reviewed.

On the entire record herein, the court

### FINDS AS FACTS

1. The imported merchandise which consists of ladies wigs, turban wigs, turbans for turban-wigs, ponytails and wiglets was manufactured and exported by Brentwood Wig Manufactory, Ltd. of Kowloon, Hong Kong. The exportations in the involved ten entries were made between June 9, 1964 and July 11, 1964, both dates inclusive.

2. The merchandise does not appear on the final list published by the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521.

3. The merchandise was appraised on the basis of constructed value which is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

4. The plaintiff claims that the export value which is defined in section 402(b) of the above amended tariff act is the proper basis for appraisement, and alternatively that constructed value, *supra*, is substantially less than the appraised value.

5. The record discloses that Brentwood Wig sold its entire stock to the plaintiff herein, Majestic Electronics, Inc., an exclusive purchaser in the United States and made no sales or offers to other United States firms; that the prices were in line with prices of other Hong Kong producers in 1964, of merchandise similar according to plaintiff's specifications; that there were no discrepancies noted in the record of payments by Majestic to Brentwood Wig; that the prices were as a result of arm's length negotiations; that Majestic did not exercise control over Brentwood Wig; that Brentwood Wig produced approximately 50 percent of all wigs manufactured in Hong Kong during the involved export period; that Brentwood Wig exported weekly about 1700 pieces to Majestic while another firm's price list was applicable to purchasers of less than 300 pieces at slightly different prices; that

Majestic advanced monies to Brentwood Wig in advance of shipment without charging interest; that other producers operate on a minimum of 15 percent profit while the profit on sales by Brentwood Wig to Majestic for each item is at least 25 percent.

As conclusions of law, on the record, the court finds:

1. That the imported merchandise is subject to duty under section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

2. That the sales by Brentwood Wig to Majestic were sales of such or similar merchandise in the principal market of Hong Kong in the usual wholesale quantities, in the ordinary course of trade for exportation to the United States, to a selected purchaser at wholesale at prices which fairly reflect the market values of the merchandise.

3. That the imported merchandise is subject to duty on the basis of export value as defined in section 402(b) of said amended tariff act at the invoiced and entered values.

4. That the appraisements on the basis of constructed value, section 402(d) of said amended tariff act, have been overcome and are ineffectual.

Judgment will be entered accordingly.