KARL SCHROFF & ASSOCIATES, Inc.,
Strombecker Corp., Appellants,

v.

UNITED STATES, Appellee.

R.D. 11720;  Reappraisements R66/21838,
R66/21841, R66/19895.

United States Customs Court,
Second Division, Appellate Term.

April 28, 1971.

Schwartz & Lidstrom, Chicago, Ill. (Earl R. Lidstrom, Chicago, Ill., and Barnes, Richardson & Colburn, New York City, of counsel), for appellants.

L. Patrick Gray, III, Asst. Atty. Gen. (Andrew P. Vance and Urban S. Mulvehill, New York City, trial attorneys), for appellee.

Before CLARK, Associate Justice,* and FORD and NEWMAN, Judges.

CLARK, Associate Justice:

This is an application for review of a decision and judgment sustaining the appraised values assessed against various motors and parts of toy roadway racing sets which were manufactured by various Japanese companies and exported from Japan to the Strombecker Corporation in Chicago; and dismissing claims on two items that were found not to have been appraised and hence were premature. Karl Schroff & Associates, Inc., et al. v. United States, 65 Cust.Ct., R.D. 11720 (August 20, 1970). The judgment covered three appeals (R66/21838, R66/21841 and R66/19895) which were consolidated at trial. The merchandise was shipped by Onishi Company, buying agent for Strombecker to Chicago and Karl Schroff & Associates, Inc. is the customs house broker for the latter.

The various items at issue were entered at the invoiced ex-Onishi warehouse prices but were appraised at such prices *plus* a proportionate share of the charges incurred subsequently by appellants covering inland freight, insurance, hauling, lighterage and petties from the Onishi warehouse in Tokyo to shipboard. The appellants contend that the appraisements are separable and that the addition of the internal charges—subsequent to purchase—was erroneous. The trial judge however upheld the appraisement on the ground that the appellants had not shown that the imports at issue were freely sold or offered for sale to all purchasers on an ex-warehouse basis which precluded the application of the separability rule as to appraisement and lead to affirmance. The appellants agree to the dismissal as to the two items which the court found not to be appraised but the Government contends that the dismissal was error.

1. The record consists of the testimony of Alan Shure, the Vice President of Strombecker, who handled the matter in question, and the affidavit of Akio Onishi, Chairman of the Board of Onishi Company which it is stipulated was the buying agent for Strombecker. The Shure testimony shows that he was employed by Strombecker for eleven years including the period involved here; that Strombecker is a manufacturer of a die cast line of "Tootsie Toy" as well as of model racing sets and hobby kits; that during 1965 Shure was responsible for all imports of Strombecker and is familiar with the importations involved here which were purchased by him in December, 1964, or January, 1965; that Shure had been personally acquainted with the Onishi Company for 30 years and his family had business relations with it since 1901, while Strombecker itself had used Onishi as agent only since 1961; that Onishi's duties were to handle the exportation of merchandise that Shure purchased from manufacturers in Japan, perform shipping and collating services and to act as translator with the manufacturers; that since 1961 Shure had made from 40 to 45 business trips to Japan to develop products and work with manufacturers, discuss ex-factory prices, quality and delivery problems; and, finally, that while Shure at times had a target price of his own that in most cases pricing was by the manufacturer, which he rejected or accepted. In the Onishi affidavit it is developed that the Onishi Company acts as buying agent for buyers of Japanese products in other countries as well as the United States; that the prices for the merchandise involved here were in yen and required delivery to Onishi's warehouse in Tokyo; that the charges for subsequent inland freight, insurance, storage, haulage, lighterage and petties were paid by Onishi for the account of Strombecker and none of the money went to the manufacturers; that this method of doing busi-

---

* The Honorable Tom C. Clark, Associate Justice of the Supreme Court of the United States, Retired, sitting by special designation.

ness was the same as that utilized by various other United States purchasers whom Onishi represented, naming two such firms and that the manufacturers involved in the items here freely offer and sell their line of merchandise to all purchasers on the same basis i. e. delivered at the Onishi' warehouse; and, finally, that other manufacturers of toys in the principal markets in which Onishi deals offer and sell their merchandise in like manner.

■ 2. It is agreed by the parties that the export value as defined in § 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956,[1] is the proper basis of value and we adopt the same despite the failure of the record to so indicate. Under this section the export value is the price at the time of exportation at which the merchandise is freely sold in the principal markets of Japan in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States *plus,* when not included in such price, the cost of all containers and coverings and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

■ Under the decided cases where the ex-warehouse or factory prices and other charges are stated separately on the invoices and the appraiser's finding is expressed in terms of such ex-warehouse or factory prices plus additional charges, the appraisement is deemed separable. United States v. Fritzsche Bros. Inc., 35 CCPA 60, C.A.D. 371 (1947); United States v. Supreme Merchandise Co., 48 Cust.Ct. 714, A.R.D. 145 (1962); Haddad & Sons, Inc. v. United

States, 54 Cust.Ct. 600, 602–603, Reap. Dec. 10942 (1965), aff'd 56 Cust.Ct. 792, A.R.D. 205 (1966).

■ If the appraisement is separable, as we think it is here, then the unchallenged portion of an appraisement i. e. the ex-warehouse or factory invoice prices, are presumed to be correct and the only essential elements of proof are the effect and amount of the disputed charges, *provided* the merchandise involved was freely sold or offered for sale to all purchasers upon an ex-warehouse or factory basis. Hub Floral Manufacturing Company v. United States, 62 Cust.Ct. 979, A.R.D. 249, 296 F.Supp. 355 (1969), aff'd United States v. Hub Floral Manufacturing Company, 57 CCPA 134, 137, C.A.D. 993 (1970); United States v. Pan American Import Corp., 57 CCPA 134, 138, C.A.D. 993 (1970); United States v. Chadwick-Miller Importers, Inc., 54 CCPA 93, C.A.D. 914 (1967). Since we find the appraisements here to be separable the essential proof is limited to whether the imports involved were freely sold or offered for sale to all purchasers upon an ex-warehouse or factory basis, and, if so, were the additions of the inland charges permissible.

■■ 3. As we read the record "a climate has been established of sales to" Strombecker, United States v. Hub Floral Manufacturing Co., supra, at 139, by several manufacturers of the merchandise in issue at ex-warehouse or factory prices. Indeed, the witness Shure testified that he successfully negotiated with nine different manufacturers on this basis in a period of one year and seven involved merchandise in the same general product line while two were in a differ-

[1]. Section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, which reads as follows: .

(b) Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the ab-

sence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

ent line but were on the same basis. Moreover, Shure identified the prices on the invoices as correct. And, in addition, the Onishi affidavit recites that the ex-warehouse basis of doing business was utilized by various other United States purchasers represented by the Onishi Company, including Art Line Associates and M. Pressner & Co. The affidavit also stresses that the nine manufacturers involved here not only offered and sold their line of merchandise to all purchasers on the same basis as they sold to Strombecker but that other manufacturers with whom he dealt sold on the same basis. The situation is strikingly similar to that in *Hub Floral,* supra, where sales "by many different manufacturers of a variety of merchandise at ex-factory prices" were established. Likewise in *Chadwick-Miller,* supra, the buying agents affirmed that they act as such for other American purchasers "purchasing merchandise * * * on ex-factory basis." We, therefore, deem it "a reasonable inference" *Hub Floral,* supra, "that appellant was not the only purchaser able to buy at ex-factory prices, or that any special arrangements were made to accommodate it." As Shure went from "manufacturer to manufacturer of the sundry articles he desired he was able to negotiate ex-factory prices with all." Id. Also see *Pan American Import Corp.,* supra, for another factual situation that is almost identical to the instant one. We also note that the Government by its own appraisal in R66/21838 agrees that the merchandise manufactured by four separate manufacturers was appraised at the invoiced unit value, net packed, without additions and no claim is made by appellant for any lower values. Thus the Government by its own appraisement admits that in March, 1965, these manufacturers sold motors and other components exclusive of the charges shown on the invoice. As was said in United States v. Gitkin Co., 46 Cust.Ct. 788, A.R.D. 132 (1961), "the fact that some of the manufacturers regularly sold ex-factory would warrant the con-

clusion that, in the ordinary course of trade, merchandise of this type was freely available to all purchasers on an ex-factory basis." At 795. In *Gitkin* the buying agent named six American firms as importers on an ex-factory basis. Here there were two named but in addition nine Japanese firms named on invoice actually sold on that basis. There was no evidence to the contrary. On such a showing we cannot say that the quantum of proof is insufficient to make out a prima facie case and shift the burden of proceeding to the Government. Nor do we believe that the decision on the quantum of proof should be reached on the legal niceties existing between facts and conclusions. Rather than discarding ultimate facts as not meeting the evidentiary standard we should assess them in the light of their contribution to the discovery of truth and the just determination of the proceeding. In this connection the experience of the witness and his connection with the transaction, the adequacy of his statements as a whole and any possible motive to deceive might be among the essential criteria to be considered. See Mannesmann-Meer Inc. v. United States, 433 F.2d 829, 58 CCPA, C.A.D. 995 (1970).

■■ We now reach the issue as to the addition of the inland charges. We take it to be established law that such charges are not part of dutiable value. It was so held as early as United States v. Lyons, 13 Ct.Cust.Appls. 639, T.D. 41484 (1926). It is only where no sales or offers to sell were ever made on an ex-factory basis and the merchandise was available solely at an f. o. b. price that export value has been held to include the additional charges. United States v. Paul A. Straub & Co., Inc., 41 CCPA 209, C.A.D. 553 (1954); Mottola v. United States, 46 CCPA 17, C.A.D. 689 (1958). Also see Kurt Orban Company, Inc. v. United States, 52 CCPA 20, C.A. D. 851 (1965).

■ 4. We believe that the dismissal of the items on the two invoices was also erroneous. We have examined the nota-

tions on the invoices and have concluded that the appraiser intended and did enter an appraisal "at invoiced unit values * * * net, packed." This is buttressed by the "Notice of Action Increase in Duties" which listed the f. o. b. values. See A. Zerkowitz & Co., Inc. v. United States, 62 Cust.Ct. 986, A.R. D. 250, 297 F.Supp. 350 (1969), aff'd, 435 F.2d 576, 58 CCPA, C.A.D. 1005 (1970).

■ 5. Since it is agreed that the export value, as defined in § 402(b) of the Tariff Act of 1930, as amended, is the proper basis of value, we see no necessity of discussing the claim that the basis of the appraisement is unknown. It appears that the records as to the basis of the appraiser's action were destroyed in accordance with Government routine. Under such circumstances it would appear impermissible to allow the Government to take advantage of such an event and thus bar the appellants from relying on the presumptions which ordinarily flow from the separable appraisement.

We have also carefully considered all of the additional arguments and authorities cited in support of appellee's position and have concluded they are without merit. The judgment is therefore reversed in part and remanded for further proceedings consistent with the opinion herein.

The court therefore finds as facts:

1. The merchandise covered by the consolidated appeals for reappraisement consists of motors and various other components for roadway race sets, manufactured by nine different manufacturers, and exported from Japan during 1965 by Onishi Company, the *bona fide* buying agent of the importer.

2. Merchandise such as is involved is not included on the final list published by the Secretary of the Treasury, T.D. 54521.

3. The merchandise involved was entered at invoiced ex-warehouse (described as ex-factory on the invoice) prices, including packing, but exclusive of stated expenses incurred for freight, insurance, storage, hauling and lighterage, petties and buying commission.

4. The record does not reveal the basis of value on which appraisement was made, but both parties agree that the proper basis of appraisement is export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

5. In R66/21838 and R66/21841, appraisement was made at undisputed unit prices ex-warehouse of the buying agent (expressed on the invoices as ex-factory prices), plus a pro rata share of charges incurred in Japan for transportation from the agent's warehouse to the port, insurance premiums from godown to on board, storage, hauling and lighterage, and petties, in the amounts as indicated on the invoices.

6. In R66/19895, the merchandise was appraised on an f. o. b. basis.

7. The involved merchandise was purchased from the various manufacturers either by direct negotiation between an officer of the purchaser and the manufacturer, or through its buying agent, at unit prices which in all cases included delivery to the warehouse of the purchaser's buying agent.

8. The disputed charges were all incurred after delivery of the merchandise by the various manufacturers to the purchaser's buying agent.

9. No portion of the disputed charges was paid to any manufacturer.

10. Onishi Company is the *bona fide* buying agent of Strombecker Corporation.

11. The record establishes that the purchaser negotiated for the purchase of the merchandise involved at prices which included delivery to his buying agent's warehouse and was able to take delivery from the various manufacturers at such

warehouse, and that other purchasers represented by the purchaser's buying agent were able to do likewise.

12. In R66/21838 and R66/21841 on or about the dates of exportation of the merchandise herein involved, such or similar merchandise was freely sold or offered for sale to all purchasers in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at prices ex-warehouse of the purchaser's buying agent, as invoiced.

We therefore conclude:

■ 1. Export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of appraisement herein.

■ 2. In R66/21838 and R66/21841, the appraisement at invoiced unit prices plus stated charges is a separable appraisement susceptible of being challenged in part while relying upon the presumption of correctness of the appraising officer's return as to all other elements of export value.

■ 3. As to R66/21838 and R66/21841, said export value is represented by the unit price ex-warehouse of the buying agent, (described on the invoices herein as ex-factory unit prices), exclusive of invoiced amounts for inland freight, insurance, storage, hauling and lighterage, petties, and buying commission and that the judgment below covering these appeals is reversed.

■ 4. As to R66/19895, the decision relating to the two cartons of motors on the basis of export value f. o. b. is affirmed and judgment of the trial court covering the remaining 29 cartons is reversed and remanded for further proceedings consistent with the opinion herein.

Judgment will be entered accordingly.