2. Foreign value, as defined in section 402a(c), *supra*, is the correct basis of appraisement.

3. The proper foreign values are the appraised values.

Judgment will be entered accordingly.

(R.D. 11750)

Vicki Enterprises, Inc., et al. *v.* United States

Entry Nos. 887724, etc.

(Decided September 10, 1971)

*William R. Shapiro; Barnes, Richardson & Colburn*, associate counsel (*David O. Elliott* of counsel) ; for the plaintiffs.

*L. Patrick Gray, III,* Assistant Attorney General (*Bernard J. Babb* and *Susan C. Cassell,* trial attorneys), for the defendant.

MALETZ, Judge: These 41 appeals for reappraisement—which have been consolidated for trial—involve the dutiable value of certain field glasses that were manufactured by Carton Optical Industries, Ltd. of Japan (Carton),[1] shipped by Kanzo Itoh & Co. of Japan (Kanzo Itoh), and imported by plaintiff Vicki Enterprises, Inc. (Vicki). The parties are in agreement that export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of appraisement.[2] However, plaintiffs contend that such statutory values are the invoiced unit ex-factory prices exclusive of the invoiced amounts for buying commissions and inland charges, while defendant contends that the appraised values are the proper dutiable values.

We start with the basic principle that an appraisement is deemed separable where the evidence shows that a distinct and identifiable sum has been considered by the appraiser and included in the appraised value. E.g., *United States* v. *Supreme Merchandise Company,* 48 Cust. Ct. 714, 716–17, A.R.D. 145 (1962); *United States* v. *Chadwick-Miller Importers, Inc.,* 54 CCPA 93, C.A.D. 914 (1967). Against this background, in 15 appeals,[3] the appraisement was at the invoice unit values plus charges marked "X", "A", or "Y", and as to those appeals, the parties agree that the appraisements are separable.

Beyond this, plaintiffs argue that the remaining appeals—with the exception of three which have been abandoned[4]—are likewise separable, while defendant contends they are not. In 11 of these appeals,[5] each of the invoices contains, with respect to the field glasses at issue, an ex-factory unit price, a total factory amount, separately itemized amounts for various inland charges and buying commission, and a red check mark by the appraiser next to the letter "D" accompanying these itemized inland charges and buying commission. By thus placing his red check mark next to the letter "D", representing "dutiable," the appraiser clearly indicated that he utilized the breakdown of charges

---

[1] Carton was formerly known as R.Kato & Co., Ltd.

[2] Section 402(b) as thus amended reads:

(b) **Export value.**—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

[3] R67/4433, R67/4789, R67/4790, R67/4795, R67/6627, R67/7215, R67/10178, R67/13550, R67/13551, R67/15077, R67/15078, R68/3882, R68/4170, R68/6471, R68/6472.

[4] The three appeals abandoned are R67/8821, R67/8994, and R67/9000.

[5] R67/8528, R67/8699, R67/9001, R67/10179, R67/10620, R67/11393, R67/11394, R67/18616, R68/186, R68/3257, R68/3881.

contained in the invoice and held dutiable items listed as inland charges and buying commissions. Hence, in fact, the appraiser found the value of the merchandise to be the invoiced unit value plus the items indicated as being dutiable—in which circumstance each of these appraisements is clearly separable. *United States* v. *Gehrig, Hoban & Co., Inc.*, 54 CCPA 129, C.A.D. 924 (1967).

In four appeals,[6] entry was made at a total f.o.b. price and the field glasses were appraised as entered. In each of these appeals, the importer indicated on the invoice its breakdown of the f.o.b. price into ex-factory price and added charges. However, the appraiser made no indication on the papers by markings or otherwise to indicate how he determined the appraised value—and these appraisements are hence not separable. What the court said in *Concord Electronics Corp.* v. *United States*, 66 Cust. Ct. 581, 583, R.D. 11744 (1971), is equally applicable with respect to these appeals:

> The important point here, however, is that (in the absence of proof of what the appraiser did) separability is not applicable where the appraisement is made at unit f.o.b. values even though the invoices list ex-godown prices plus separate charges. * * * And the fact that a mathematical totaling of the invoice-value-plus-charges equals the appraised values does not establish the separability of the appraisement. * * *

In eight further appeals[7] the merchandise was again entered at a total f.o.b. price and the field glasses were appraised as entered. In each of these appeals, the importer indicated on the invoice its breakdown of the f.o.b. price into ex-factory price and added charges. However, there is no indication on the invoice by markings or otherwise to indicate that the appraiser adopted the figures set out in the invoice. Nonetheless, plaintiffs rely on the fact that on a separate sheet of paper, wherein the importer set forth a breakdown of inland charges and/or buying commission, there appears the word "noted" written in red ink by the appraiser. Absent any explanation in the record, the word "noted" in such circumstances means, we think, that the appraiser has seen and taken notice of the importer's statement; it does not indicate that the importer's figures *per se* were adopted as part of the appraisement. It is quite true that "an appraisement is constructively separable where there is evidence to show that the appraiser in fact calculated value by adding charges to the invoice unit price * * *." *Concord Electronics Corp.* v. *United States, supra*, 66 Cust. Ct. at 583. But, given the situation in the present case, we cannot conclude that

---

[6] R67/11392, R68/5508, R68/6744, and R68/11735.

[7] R67/4788, R67/15838, R68/184, R68/185, R68/4094, R68/9250, R68/12251, and R68/14768.

the word "noted" placed on the separate paper by the appraiser constitutes such evidence.

With respect to those appeals where the appraisements are not separable, it was, of course, plaintiffs' burden to show all elements of export value in accordance with the statutory requirements of section 402(b). Thus, plaintiffs were required to establish that the imported merchandise was freely offered for sale to all purchasers for exportation to the United States, in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, at the invoiced unit ex-factory prices. This burden plaintiffs have not attempted to meet. Accordingly, those appeals in which the appraisements are not separable must be dismissed.

This brings us to the 26 appeals where the appraisements are separable so that plaintiffs' burden was limited to showing the non-dutiability of the stated inland and buying commission charges. On this phase the record is as follows: First, Mrs. Betty V. Ossola—the president and general manager of Vicki—testified for plaintiffs to the following effect: Vicki is primarily an importing concern that sells its product to trading stamp companies and as its general manager, Mrs. Ossola does most of the buying for Vicki, some of the selling, and performs all the ordinary duties attendant upon managing a company. In late 1957 or early 1958, Mrs. Ossola met in New York with Mr. Itoh of Kanzo Itoh—who had been recommended by the Japanese consulate—to discuss the possibility of his firm representing Vicki in its purchases of Japanese merchandise. The results of these discussions were embodied in a written agreement dated January 15, 1958, between Vicki and Kanzo Itoh which reads:

> KANZO ITOH TRADING COMPANY, hereby agrees to perform the following services for VICKI ENTERPRISES, INC., for which they will be paid a 5% commission.
>
> 1) We shall contact various manufacturers, obtaining prices and other information.
> 2) We shall buy and accumulate all merchandise for shipment.
> 3) We shall pay all expenses such as delivery charges to piers, customhouse fees, etc.
> 4) We shall prepare all necesary shipping documents.

On July 28, 1965, a written supplement to this agreement was entered into as follows setting forth the details of Kanzo Itoh's obligations under the basic agreement:

> 1) We are obligated to visit manufacturers in Japan, collect samples, submit samples with ex factory quotations to you and to obtain and submit to you all other information pertaining to items which you may be interested in purchasing, such as form

of packing, cost of packing, quantities which can be produced, cost of transport to seaport, etc.[8]

2) Pursuant to your instructions we place orders for your account with the manufacturers at ex factory prices; we send confirmations of all orders to you as soon as received; we inspect merchandise when delivered to our go-down and arrange storage until availability of shipping space.

3) It is our responsibility to arrange for transport of merchandise to dockside, to pay all charges, customhouse fees and other expenses and to make provisions for shipment in the least expensive manner except that, when so instructed by you or when in our judgment the circumstances warrant, we may make arrangement for shipping in special ways.

4) We prepare all necessary shipping documents, special customs invoices and fulfill all requirements necessary for proper export of the merchandise.

In addition to the foregoing, we receive your letters of credit and make payment for your account to manufacturers, truckers, warehousemen, etc., from said letters of credit.

Prior to this supplement, Mrs. Ossola went to Japan in 1963 and met with Yasuma Tanaka, the export manager of Kanzo Itoh. Together they went to the manufacturer Carton's place of business where Tanaka negotiated with Carton for a factory price for field glasses. This price was subject to the witness' approval, while the quantity of glasses ordered was that specified by Mrs. Ossola. After reaching a verbal agreement on price, Mrs. Ossola gave Kanzo Itoh a purchase order for the merchandise, which included the cost of the field glasses, the transportation expenses from the factory to the pier, other shipping expenses and Kanzo Itoh's commission. Mrs. Ossola further testified that she sends buyers to Japan who, in accordance with instructions, negotiate for this merchandise in the same manner described above.

Also contained in the record is the affidavit of the aforesaid Yasuma Tanaka, manager of Kanzo Itoh, to which are attached true copies of the January 15, 1958 buying agreement between Vicki and Kanzo Itoh and the July 28, 1965 supplemental agreement. In the affidavit Tanaka states that he has held the position as manager of Kanzo Itoh since 1950 and has responsibility for and personal knowledge of transactions conducted by his company for Vicki. He avers that his company acts in the capacity and performs the duties described in the accompanying agreements; that all orders placed for Vicki by his company, including those placed with Carton, are for the account of Vicki; and that such orders represent purchases by Vicki from the manufacturers at prices accepted by Vicki. He further avers the following: That his company receives a buying commission of 5 percent of the ex-factory

---

[8] Although this paragraph of the supplement calls for transmittal of ex-factory quotations, Mrs. Ossola explained that in practice Kanzo Itoh is allowed to quote Vicki its full f.o.b. costs, i.e., the factory price, plus cost of inland charges, plus Kanzo Itoh's commission.

prices from Vicki as well as reimbursement for inland costs it prepays for the account of Vicki; that the invoices prepared by Kanzo Itoh accurately reflect the ex-factory prices paid to the maker and the inland charges and commission amounts; that Carton does not share in the commissions earned by Kanzo Itoh and that neither company is commonly controlled or has a financial interest in the other; that in its dealings with Vicki his company acts solely as its purchasing agent; and that at no time has it sold merchandise to Vicki.

Plaintiffs have also included in the record an affidavit of S. Hoshino, manager of Carton since 1950. He avers that he personally negotiated all transactions of field glasses sold to Vicki and that such transactions have been accomplished through Kanzo Itoh for Vicki. He further avers that prices for field glasses purchased by Vicki have been established only after approval by Vicki; that Carton's prices to Vicki are always established on an ex-factory basis;[9] that neither Carton nor Kanzo Ito have common offices or financial interest in each other; that Kanzo Itoh never supplies Carton with any materials for the production of the field glasses; that Carton has no exclusive selling agreement with Vicki; and that identical or similar field glasses are offered for sale without restriction to any purchaser on an ex-factory basis.

Finally, the record contains a report, dated February 1, 1965, of William G. Powell, Assistant Regional Customs Representative in Japan. He relates an interview on that date with a Mitsuyoshi Kawamura of Carton in which Kawamura is reported to have stated the following: That Carton never sold and would never sell directly to Vicki; that if it ever did sell directly to Vicki, it would be f.o.b.; that Kanzo Itoh enjoys an exclusive on Carton's sales of field glasses to the United States; and that when Carton delivers the field glasses to the Tokyo warehouse, Kanzo Itoh then takes over the ownership. Attached to the report are three 1964 purchase orders from Kanzo Itoh.

We turn now to the legal aspects, starting with the question as to whether the inland charges—i.e., the costs incurred in moving goods from the factory to the port of export—form part of the value of the imported merchandise. As we have already discussed, the appeals with which we are now concerned are separable. This being the case, plaintiffs had only to establish that "such or similar merchandise was in fact offered for sale to all purchasers on an ex-factory basis." *United States* v. *Pan American Import Corp.*, 57 CCPA 134, 138, C.A.D. 993 (1970). "Once this 'hurdle' has been passed, the severability rule makes it unnecessary for the importer to go further and

---

[9] Actually, the record shows that in 38 of the 41 pending appeals, Carton's prices to Vicki were on an ex-factory basis while in three appeals the prices were on an f.o.b. basis.

show what the actual ex-factory prices so offered were, as the ex-factory price he has paid * * * is conclusively presumed to meet the requirements of export value." *Ibid.*

Measured by this standard, the present record impels the conclusion that merchandise such as or similar to that in issue here was freely offered for sale to all purchasers on an ex-factory basis. Thus, the record shows for one thing that Carton's prices to Vicki were (except in three instances) actually established on an ex-factory basis. Moreover, the affidavit of Carton's manager indicates that Carton offered identical or similar field glasses for sale without restriction to any purchaser on an ex-factory basis—which affidavit the court finds persuasive considering the experience of the witness, his connection with the transactions, the adequacy of his statements as a whole, and the absence of a motive to deceive. See *Mannesmann-Meer, Inc.* v. *United States*, 58 CCPA 6, C.A.D. 995 (1970) ; *Karl Schroff & Associates, Inc.* v. *United States*, 66 Cust. Ct. 621, A.R.D. 286 (1971). And at the very least, "a climate has been established of sales to * * *" plaintiffs by the manufacturer of the merchandise in issue at ex-factory prices. *United States* v. *Hub Floral Manufacturing Company*, 57 CCPA 134, 139, C.A.D. 993 (1970) ; *Karl Schroff & Associates, Inc.* v. *United States, supra*, 66 Cust. Ct. at 624. Defendant argues, however, that owing to the negotiations establishing Carton's ex-factory prices to Vicki, the subsidiary presumption that the price to plaintiffs was the freely offered price has been rebutted. Therefore, according to defendant, plaintiffs were required to establish a *price* at which such or similar merchandise was sold. The argument, however, is without merit. For (as we have seen) once the importer establishes that such or similar merchandise was in fact offered to all purchasers on an ex-factory basis, it is unnecessary for the importer to go further and show what the actual ex-factory prices so offered were. As stated in *United States* v. *Chadwick-Miller Importers, Inc.*, 54 CCPA 93, 95, C.A.D. 914 (1967) : "Although there is no evidence to show that other purchasers could have bought the merchandise at the same ex-factory prices paid by them, there need not have been such evidence, in view of the separability rule." See also *United States* v. *Pan American Import Corp., supra*, 57 CCPA at 138. It is concluded, in short, that export value is represented by the invoiced ex-factory prices and that the inland charges are therefore not part of dutiable value.

Coming now to the dutiable status of the amounts listed in the invoices as buying commissions, it is a settled principle of customs jurisprudence that a charge incurred for services performed in purchasing goods in a country of export which does not inure to the

benefit of the seller is a buying commission and, as such, is non-dutiable. E.g., *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, 717, A.R.D. 145 (1962), and cases cited. "However, the *bona fides* of a buying commission is a question of fact to be determined from the evidence adduced in any particular case." *Ibid.* The problem in this context is to determine whether or not plaintiffs have established by a preponderance of the evidence that Kanzo Itoh was a *bona fide* buying agent.

Plaintiffs' evidence on this point (as discussed previously) consists of the testimony of the president/general manager of Vicki who was in charge of all purchases from Japan. She testified to having personally hired the Kanzo Itoh firm to make purchases of merchandise for Vicki in Japan—and this testimony is supported by the written agreements of 1958 and 1965 that were introduced in evidence. Additionally, the witness described a 1963 buying trip to Japan in which she negotiated a factory price with the maker, Carton. Plaintiffs' evidence also contains the sworn affidavit of the manager of Kanzo Itoh in which he avers that Kanzo Itoh acted solely as purchasing agent for Vicki as specified in the 1958 and 1965 written agreements. This evidence, in turn, is corroborated by the affidavit of 'Carton's manager who personally negotiated all sales of field glasses involving Vicki.

Against this evidence there is the statement in the customs report attributed to Mr. Kawamura that Carton sells field glasses outright and exclusively to Kanzo Itoh—which statement is in direct conflict with plaintiffs' evidence. However, in all the circumstances of the present case, the preponderance of the evidence favors plaintiffs. For one thing, the testimony of the president of Vicki as to the status of Kanzo Itoh vis-a-vis Vicki was not only credible, it was corroborated by the existence of a written agreement that was entered into long before the commencement of any litigation. Providing additional corroboration are the sworn affidavits of officials of Kanzo Itoh and Carton who were in a position to know the relationship as between Kanzo Itoh and Vicki. By contrast, at no point in the customs report is any information given as to what position Mr. Kawamura occupied with Carton or what his responsibilities were. Therefore, his qualifications as to the matter in dispute remain unknown. See *Majestic Electronics, Inc.* v. *United States*, 63 Cust. Ct. 628, 633, R.D. 11686 (1969). Further, "where there is a conflict between statements contained in sworn affidavits and those contained in Treasury reports submitted to the court on particular issues, the statements in the affidavits are generally accorded greater weight, by reason of the sworn character of their recitals." *United States* v. *The Heyman Co., Inc.*, 50 Cust. Ct. 564, 571, A.R.D. 157 (1963), and cases cited. For these reasons, it is concluded

that Kanzo Itoh was a *bona fide* buying agent for Vicki and that the sums paid to it were invoiced as buying commissions are non-dutiable.

Judgment will be entered in accordance with the foregoing findings and conclusions.