**UNITED STATES**

v.

**VICKI ENTERPRISES, INC.**

**A.R.D. 302; Reappraisement R67/4433
and 25 others.**

United States Customs Court,
Second Division, Appellate Term.

June 16, 1972.

Harlington Wood, Jr., Acting Asst. Atty. Gen. (Susan C. Cassell, New York City, trial atty.), for appellant.

William R. Shapiro and Barnes, Richardson & Colburn, New York City (David O. Elliott, New York City, of counsel), for appellee.

Before RAO, FORD and NEWMAN, Judges.

NEWMAN, Judge:

The United States, defendant below, seeks review of a decision and judgment of Maletz, J., in 26 of 41 consolidated appeals for reappraisement (67 Cust.Ct. R.D. 11750 (1971)) holding that the invoiced unit ex-factory prices, exclusive of the invoiced amounts for buying commissions and inland charges (transportation, storage, insurance, petties, etc.), represented the correct export values for certain field glasses (in cases) imported from Japan during the years 1965 to 1968.

The field glasses were manufactured by Carton Optical Industries, Ltd. of Tokyo, Japan (Carton),[1] shipped by Kanzo Itoh & Co. of Japan (Kanzo Itoh), and

---

1. Carton was formerly known as R. Kato & Co., Ltd.

imported by Vicki Enterprises, Inc. (Vicki) at the port of New York.

Appraisements were made on the basis of export value, as defined in 19 U.S.C. § 1401a(b),[2] at invoiced unit ex-factory prices plus the proportionate share of invoiced amounts for buying commissions and inland charges. Appellee agrees that export value is the proper statutory basis for appraisement, but contends that such statutory value is represented by the invoiced unit ex-factory prices, as determined by the trial court.

We affirm.

### THE RECORD

The record comprises the oral testimony of one witness and two documentary exhibits introduced in evidence by appellee; and a customs agent's report introduced in evidence by appellant. From our examination of the proceedings below we are satisfied that the following summary of the evidence in the decision of the trial judge is comprehensive and accurate and take the liberty of quoting therefrom:

First, Mrs. Betty V. Ossola—the president and general manager of Vicki—testified for plaintiffs to the following effect: Vicki is primarily an importing concern that sells its product to trading stamp companies and as its general manager, Mrs. Ossola does most of the buying for Vicki, some of the selling, and performs all the ordinary duties attendant upon managing a company. In late 1957 or early 1958, Mrs. Ossola met in New York with Mr. Itoh of Kanzo Itoh—who had been recommended by the Japanese Consulate—to discuss the possibility of his firm representing Vicki in its

purchases of Japanese merchandise. The results of these discussions were embodied in a written agreement dated January 15, 1958 between Vicki and Kanzo Itoh * * *.

\* \* \* \* \* \*

On July 28, 1965, a written supplement to this agreement was entered into * * * setting forth the details of Kanzo Itoh's obligations under the basic agreement:

\* \* \* \* \* \*

Prior to this supplement, Mrs. Ossola went to Japan in 1963 and met with Yasuma Tanaka, the export manager of Kanzo Itoh. Together they went to the manufacturer Carton's place of business where Tanaka negotiated with Carton for a factory price for field glasses. This price was subject to the witness' approval, while the quantity of glasses ordered was that specified by Mrs. Ossola. After reaching a verbal agreement on price, Mrs. Ossola gave Kanzo Itoh a purchase order for the merchandise, which included the cost of the field glasses, the transportation expenses from the factory to the pier, other shipping expenses and Kanzo Itoh's commission. Mrs. Ossola further testified that she sends buyers to Japan who, in accordance with instructions, negotiate for this merchandise in the same manner described above.

Also contained in the record is the affidavit of the aforesaid Yasuma Tanaka, manager of Kanzo Itoh, to which are attached true copies of the January 15, 1958 buying agreement between Vicki and Kanzo Itoh and the July 28, 1965 supplemental agreement. In the affidavit Tanaka states that he has held the position as manager of

2. 19 U.S.C. § 1401a(b) reads:

(b) For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Kanzo Itoh since 1950 and has responsibility for and personal knowledge of transactions conducted by his company for Vicki. He avers that his company acts in the capacity and performs the duties described in the accompanying agreements; that all orders placed for Vicki by his company, including those placed with Carton, are for the account of Vicki; and that such orders represent purchases by Vicki from the manufacturers at prices accepted by Vicki. He further avers the following: That his company receives a buying commission of 5 percent of the ex-factory prices from Vicki as well as reimbursement for inland costs it prepays for the account of Vicki; that the invoices prepared by Kanzo Itoh accurately reflect the ex-factory prices paid to the maker and the inland charges and commission amounts; that Carton does not share in the commissions earned by Kanzo Itoh and that neither company is commonly controlled or has a financial interest in the other; that in its dealings with Vicki his company acts solely as its purchasing agent; and that at no time has it sold merchandise to Vicki.

Plaintiffs have also included in the record an affidavit of S. Hoshino, manager of Carton since 1950. He avers that he personally negotiated all transactions of field glasses sold to Vicki and that such transactions have been accomplished through Kanzo Itoh for Vicki.

He further avers that prices for field glasses purchased by Vicki have been established only after approval by Vicki; that Carton's prices to Vicki are always established on an ex-factory basis; [footnote omitted] that neither Carton not Kanzo Itoh have common offices or financial interest in each other; that Kanzo Itoh never supplies Carton with any materials for the production of the field glasses; that Carton has no exclusive selling agreement with Vicki; and that identical or similar field glasses are offered for sale without restriction to any purchaser on an ex-factory basis.

Finally, the record contains a report, dated February 1, 1965, of William G. Powell, Assistant Regional Customs Representative in Japan. He relates an interview on that date with a Mitsuyoshi Kawamura of Carton in which Kawamura is reported to have stated the following: That Carton never sold and would never sell directly to Vicki; that if it ever did sell directly to Vicki, it would be f.o.b.; that Kanzo Itoh enjoys an exclusive on Carton's Sales of field glasses to the United States; and that when Carton delivers the field glasses to the Tokyo warehouse, Kanzo Itoh then takes over the ownership. Attached to the report are three 1964 purchase orders from Kanzo Itoh.

## DECISION OF THE TRIAL COURT

The trial judge determined that the appraisements in the 26 appeals under review were separable; and consequently that the importer's burden was limited to showing the nondutiability of the stated inland charges and buying commission.

Citing the decision of our appellate court in United States v. Pan American Import Corp., 428 F.2d 848, 57 CCPA 134, C.A.D. 993 (1970), the trial judge held: in order for appellee to meet its burden of proof it had to establish that merchandise such as or similar to that in issue was offered for sale to all purchasers on an ex-factory basis; and found appellee had met such burden of proof.

Following the rationale of the appellate court holdings in *Pan American, supra,* and in United States v. Chadwick-Miller Importers, Inc., 54 CCPA 93, C.A.D. 914 (1967), the trial court rejected the Government's contention that: owing to negotiations establishing Carton's ex-factory prices to Vicki, the subsidiary presumption that the price to appellee was the freely offered price has been rebutted; and accordingly, appellee was

required to establish a price at which such or similar merchandise was freely sold or offered for sale to all purchasers.

Thereupon, the trial court concluded that export value is represented by the invoiced ex-factory prices, and that the inland charges are, therefore, not part of dutiable value.

With respect to the invoiced amounts for buying commission, the trial judge found that Kanzo Itoh was a *bona fide* buying agent for Vicki, and that the sums paid to it that were invoiced as buying commissions are nondutiable. In arriving at his conclusion, the trial judge accorded more weight to the quality of the sworn and corroborated statements of appellee's three witnesses than to the report of a customs agent based upon an interview with an employee of the manufacturer whose position and responsibilities were not disclosed in the report.

### 1.

As stated above, the trial judge found that the appraisements covered by this review are separable. That finding is not challenged by appellant. An importer's burden of proof in cases where the appraisement is separable has been the subject of extensive consideration by our appellate court in recent years: United States v. Pan American Import Corp., 428 F.2d 848, 57 CCPA 134, C.A. D. 993 (1970); United States v. Hub Floral Manufacturing Company, 428 F. 2d 853, 57 CCPA 139, C.A.D. 993 (1970); United States v. Bud Berman Sportswear, Inc., 55 CCPA 28, C.A.D. 929 (1967); and United States v. Chadwick-Miller Importers, Inc., 54 CCPA 93, C.A.D. 914 (1967).

In *Pan American* and *Hub Floral* the appellate court quoted with approval the following portion of the Government's brief in those appeals (428 F.2d at 852, 57 CCPA at 138):

* * * the doctrine of severability has no relation to the first "hurdle"

that the importer must clear, i.e., to establish that such or similar merchandise was in fact offered to all purchasers on an ex-factory basis. Once this "hurdle" has been passed, the severability rule makes it unnecessary for the importer to go further and show what the actual ex-factory prices so offered were, as the ex-factory price he has paid then (and only then) is *conclusively presumed* to meet the requirements of export value. [Emphasis added.]

Additionally, in *Hub Floral* (428 F.2d at 853, 57 CCPA at 139) the appellate court adopted the following statement by the Appellate Term of this court[3] concerning the importer's burden of proof "in order to bring the separability rule into effect and thereby to prevail":

It may now be considered settled law that the presumption of correctness of the unchallenged portion of an appraisement at ex-factory plus inland charges values extends to and *preserves the per se ex-factory prices*, and limits the essential elements of proof to the effect and/or amount of the disputed charges. If it be contended that the disputed charges formed no part of the value of the imported merchandise because they were incurred subsequent to the time when it was packed, ready for shipment to the United States, in the principal market of the country of exportation, all that need be proven is that such or similar merchandise *was freely sold or offered for sale upon an ex-factory basis*. [Emphasis added by CCPA.]

In *Chadwick-Miller* the appellate court stated (54 CCPA at 95):

* * * Although there is no evidence to show that other purchasers could have bought the merchandise at the same ex-factory prices paid by them, there need not have been such evidence, in view of the separability rule.[4]

---

3. 62 Cust.Ct. 979, 983, A.R.D. 249, 296 F.Supp. 355 (1969).

4. We also have noted B & W Wholesale Co., Inc. v. United States, 58 CCPA 92,

■ Appellee also relies upon several older decisions of our appellate court which indicate that where merchandise can be purchased at a price which does not include inland freight charges, such charges are not part of dutiable value: Kurt Orban Co., Inc. v. United States, 52 CCPA 20, C.A.D. 851 (1965); Mottola v. United States, 46 CCPA 17, C.A.D. 689 (1958); United States v. Paul A. Straub & Co., Inc., 41 CCPA 209, C.A.D. 553 (1954); United States v. Lyons, 13 Ct.Cust.App. 639, T.D. 41484 (1926).

Appellant contends that the evidence adduced by appellee is insufficient to sustain its burden of proof, i.e., that such or similar merchandise was freely sold or offered for sale to all purchasers on an ex-factory basis. The Government argues that Mr. Hoshino's averment in his affidavit that "[i]dentical or similar Field Glasses as that sold to Vicki Enterprises, Inc. are offered for sale to any purchaser who cares to buy, without restriction, and at ex-factory prices" is a statement of ultimate fact without corroborating facts or evidence.

In weighing Hoshino's affidavit, the trial court considered "the experience of the witness, his connection with the transactions, the adequacy of his statements as a whole, and the absence of a motive to deceive", citing Mannesmann-Meer, Inc. v. United States, 58 CCPA 6, C.A.D. 995 (1970); Karl Schroff & Associates, Inc. v. United States, 66 Cust. Ct. 621, A.R.D. 286, 326 F.Supp. 967 (1971). Moreover, the trial judge held that "And at the very least, 'a climate has been established of sales to * * *' plaintiffs by the manufacturer of the merchandise in issue at ex-factory prices", citing United States v. Hub Floral Manufacturing Company, 428 F.2d 853, 57 CCPA 134, 139, C.A.D. 993 (1970); Karl Schroff & Associates, Inc.

v. United States, supra, 66 Cust.Ct. at 624, 326 F.Supp. 967.

■ In *Mannesmann-Meer*, our appellate court made it clear that evidence may not be rejected or disregarded merely because it is in the form of a statement of ultimate fact or is conclusory. We think that here, under all the facts and circumstances, the trial judge had an ample basis for relying upon Mr. Hoshino's conclusory statement.

Appellant characterizes the trial court's reliance on Hoshino's affidavit as "unrealistic" since Hoshino's averment that "Carton's prices to Vicki are always established on an ex-factory basis" allegedly is refuted by the f.o.b. transactions in Reap. Nos. R67/8821, R67/8994 and R67/9000. However, an examination of the invoices in this case discloses that they are not Carton's invoices, but rather those of Kanzo Itoh. Mrs. Ossola explained that Vicki did not require a manufacturer's invoice from Kanzo Itoh (Tr. 34).

Thus, the record shows that while Carton always sold to Vicki on an ex-factory basis, in three of forty-one appeals for reappraisement before the trial judge, Kanzo Itoh invoiced Vicki f.o.b. Considering that the vital fact here is the ex-factory basis on which Carton actually sold its field glasses, and not the manner in which Kanzo Itoh invoiced the transactions to Vicki, there is no significance in appellant's point that three of the forty-one invoices were on an f.o.b. basis. Accordingly, we find that Hoshino's affidavit is not refuted by such invoices, as claimed by appellant.

■ Appellant further insists that even though Mr. Kawamura's position with Carton is not disclosed in the Treasury report, such report should nevertheless be accorded more weight than

C.A.D. 1010 (1971), wherein the court held that the appellant had the burden of proving that merchandise like or similar to the importation was in fact freely sold or offered for sale in accordance with the statutory definition of export

value at the claimed ex-factory price (i. e., the price at which appellant entered the goods), or at the alternatively claimed "ex-godown" prices. However, this holding is not cited by either party here.

the oral testimony and affidavits, all given under oath, adduced by appellee. The Government argues that since Mr. Kawamura was in a position to obtain copies of purchase orders (which are attached to the Treasury report), it may be inferred that he was personally acquainted with the sales practices of Carton. We do not, however, perceive how Kawamura's access to copies of purchase orders at Carton raises any inference that he had personal knowledge of Carton's sales practices. In sum, we agree with the conclusion of the trial judge that the preponderance of evidence favors appellee; and find that appellee has carried its burden of proof that merchandise such as or similar to that imported was in fact freely sold or offered for sale to all purchasers on an ex-factory basis.

### 2.

■ We now turn to appellant's additional contention that appellee cannot prevail since Carton's ex-factory prices to Vicki were the result of bargaining or negotiation between them. Appellant's theory is that the subsidiary presumption arising out of the separable nature of the appraisements (that the ex-factory price to Vicki was the price at which the merchandise was freely sold or freely offered for sale to all purchasers)[5] has been rebutted.

In support of its contention, appellant relies upon the landmark holding in United States v. Mexican Products Co., 28 CCPA 80, C.A.D. 129 (1940), wherein the appellate court rejected prices reached through bargaining as a basis for finding statutory export or foreign value. In *Mexican Products* it appears that, as a result of bargaining, goods were sold at various discounts from list price as well as at list price. The appellate court held that under those circumstances the list price was the only price at which the goods were freely offered to all purchasers. See also Aceto Chem-

ical Co., Inc. v. United States, 51 CCPA 121, C.A.D. 846 (1964).

But appellee does not dispute that Carton's ex-factory price to Vicki was the result of bargaining. Rather appellee points out and correctly so, that *Mexican Products* is distinguishable inasmuch as that case did not involve a separable appraisement.

Hence, appellant's contention would appear to have some merit only if we were to ignore that under the separability rule "the ex-factory price [Vicki] has paid * * * is conclusively presumed to meet the requirements of export value". United States v. Pan American Import Corp., *supra*, 428 F.2d at 852, 57 CCPA at 138.

Accordingly, we agree with the trial court's conclusion that:

> * * * plaintiffs had only to establish that "such or similar merchandise was in fact offered for sale to all purchasers on an ex-factory basis." United States v. Pan American Import Corp. [428 F.2d 848] 57 CCPA 134, 138, C.A.D. 993 (1970). "Once this 'hurdle' has been passed, the severability rule makes it unnecessary for the importer to go further and show what the actual ex-factory prices so offered were, as the ex-factory price he has paid * * * is conclusively presumed to meet the requirements of export value." *Ibid.*

### 3.

■ Finally, we see no error in the finding and conclusion of the trial judge that Kanzo Itoh was a *bona fide* buying agent for Vicki, and consequently the invoiced buying commissions were nondutiable. In this connection, it should be observed that while appellant's statement under rule 31 challenged the holding below that Kanzo Itoh was a *bona fide* buying agent of Vicki, appellant did not brief the issue nor present any oral argument on the question.

---

5. United States v. Bud Berman Sportswear, Inc., 55 CCPA 28, C.A.D. 929 (1967).

This opinion includes our findings of fact and conclusions of law.

The decision and judgment of the trial court are affirmed, and judgment will be entered accordingly.

RAO and FORD, JJ., concur.