(C.D. 4653)

STROMBECKER CORP. *v.* UNITED STATES

182

Court Nos. R69/13398, etc.

(Decided June 3, 1976)

*Schwartz & Lidstrom* (*Robert E. Burke* of counsel) for the plaintiff.
*Rex E. Lee*, Assistant Attorney General (*John A. Gussow*, trial attorney), for the defendant.

LANDIS, Judge: This case involves customs appraisement, on constructed value basis,[1] of merchandise exported from Japan by Bee West Co. Plaintiff, Strombecker Corp., entered the merchandise at Chicago. For customs entry purposes plaintiff filed invoices prepared by Bee West covering consolidated shipments, that is, merchandise of several manufacturers consolidated into one shipment.

As officially noted on twenty of the twenty-four appraised entry invoices, the merchandise was appraised at invoice unit prices, net packed, plus separately stated invoice charges marked (X),[2] plus, where applicable, an amount for tooling costs.[3] The charges marked (X) are identified on the twenty invoices as inland freight to shipping port, insurance premiums, storage, hauling and lighterage, petties, and buying commission 5 percent.

---

[1] In 19 U.S.C.A. § 1401a(d), constructed value is defined as follows:
 (d) For the purposes of this section, the constructed value of imported merchandise shall be the sum of—
 (1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;
 (2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and
 (3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.
[2] The appraised entry invoices in R70/8926, R70/9645, R70/3411 and R70/4091 do not show this notation.
[3] The addition of tooling costs is not in dispute.

Plaintiff, in its amended complaint, does not contest the appraiser's constructed value basis of appraisement.[4] What the case boils down to is plaintiff's claim that the appraiser should not have included the inland charges and buying commission in his valuation because the inland charges and buying commission were not expenses incurred by the manufacturer in producing the imported merchandise but expenses incurred by plaintiff for its own account.

The parties have briefed two basic issues. The first issue goes to the question of whether there was a separable appraisement whereby plaintiff can rely on the presumption of correctness that attaches to all elements of the appraised values and selectively contest the position taken by the appraiser with respect to the invoiced inland charges and buying commission. The second issue poses the question of whether or not the invoiced inland charges and buying commission added by the appraiser should be deducted from the appraised constructed value of the imported merchandise. Legal determination of those issues generally depends on the facts in each case. Elements of a separable appraisement not disputed are presumed correct. *United States* v. *Bud Berman Sportswear, Inc.*, 55 CCPA 28, C.A.D. 929 (1967). Inland charges incurred after merchandise is in a condition packed ready for shipment to the United States incurred for the account of and paid for by the purchaser are not part of a statutory constructed value. It is also judicially established that the value of merchandise does not include a *bona fide* buying commission paid by an importer. *Tapetes Luxor, S.A., et al.* v. *United States*, 56 Cust. Ct. 797, A.R.D. 206 (1966), *aff'd*, 54 CCPA 116, C.A.D. 921 (1967). On this record, excepting the four appraisement entries mentioned earlier,[5] I find for plaintiff on both issues.

Four of the appraisement entries in this case (R70/8926, R70/9645, R70/3411 and R70/4091) contain no relevant official notation, and there is no other evidence that indicates that inland charges and buying commission were included in the appraised constructed values. Absent official notation, or some other evidence of what the appraiser did in computing the constructed values, I am unable to find or determine that any of the four appraisement entries above referred to included inland charges and buying commission on con-

---

[4] Plaintiff, in its original complaint, claimed that export value (19 U.S.C.A. § 1401a(b)) was the proper basis for appraisement. Without objection, plaintiff amended its complaint to claim constructed value and export value only as an alternative basis. The question of whether the proof probatively establishes that the imported merchandise was freely offered to all purchasers or whether there was a climate indicating the same is not argued by the parties and is not deemed pertinent to a consideration of a constructed value appraisement.

See, *Karl Schroff & Associates, Inc., Strombecker Corp.* v. *United States*, 66 Cust. Ct. 621, A.R.D. 286 (1971), and compare, *Tapetes Luxor, S.A., et al.* v. *United States*, 56 Cust. Ct. 797, A.R.D. 206 (1966), *aff'd* 54 CCPA 116, C.A.D. 921 (1967).

[5] N. 2. *supra.*

184

structed value basis. *Cf. Bowl-O-Beauty Co.* v. *United States,* 75 Cust. Ct. 119, C.D. 4615 (1975). Accordingly, I find that the appraised constructed values in R70/8926, R70/9645, R70/3411 and R70/4091 are not separable. In those four reappraisements, therefore, plaintiff is put to prove all the statutory elements of constructed value. *Concord Electronics Corp.* v. *United States,* 66 Cust. Ct. 581, R.D. 11744 (1971), *aff'd,* 69 Cust. Ct. 241, A.R.D. 304, 345 F. Supp. 1000 (1972). Plaintiff does not presume to argue that it has proved all the statutory elements of constructed value. Since plaintiff has failed to overcome the presumption of correctness attaching to the appraised constructed values of the imported merchandise covered by the four reappraisement entries, the four will be severed and the case as to them dismissed.

The merchandise covered by the remaining twenty reappraisement entries, as I stated earlier, was appraised on constructed value basis at invoice unit prices, net packed, plus, *inter alia,* the officially noted disputed inland charges and buying commission.

Appraisements in that form have been consistently held separable.[6] *United States* v. *Vicki Enterprises, Inc.,* 68 Cust. Ct. 324, A.R.D. 302, 343 F. Supp. 1381 (1972), *aff'd,* 61 CCPA 75, C.A.D. 1125 (1974); *Karl Schroff & Associates, Inc., Strombecker Corp.* v. *United States,* 66 Cust. Ct. 621, A.R.D. 286, 326 F. Supp. 967 (1971); *Globemaster Midwest, Inc.* v. *United States,* 67 Cust. Ct. 539, R.D. 11758, 337 F. Supp. 465 (1971). And while the separability doctrine of appraisement developed in the context of appraisements on export value basis, the doctrine has been extended to appraisements on constructed value basis without serious challenge or objection from defendant. *Cavalier Shipping Co., Inc., et al.* v. *United States,* 57 Cust. Ct. 652, R.D. 11231 (1966), *aff'd,* 59 Cust. Ct. 850, A.R.D. 229 (1967), *rev'd on other grounds,* 56 CCPA 217, C.A.D. 965, 412 F. 2d 245 (1969); *Troy Textiles, Inc.* v. *United States,* 64 Cust. Ct. 654, R.D. 11697 (1970), *H. M. Young Associates, Inc.* v. *United States,* 64 Cust. Ct. 642, R.D. 11695 (1970); *see also Tapetes Luxor, S.A., et al.* v. *United States, supra.* Guided by the cited precedents, I find that the inland charges and buying commission included in the appraised constructed values are separable from the unit prices, net packed, and proceed to weigh the proofs that the expense of those items was for the account of and paid for by the importer and not the manufacturer.

The proofs in this case are not substantially different from the proofs which these same parties adduced in *Karl Schroff & Associates, Inc., Strombecker Corp.* v. *United States, supra.* In the cited *Strombecker* case the appraiser valued the merchandise on export value basis.

---

[6] Defendant's argument that the appraisements are not separable materially avoids discussing the appraiser's invoice notations.

On that basis the appraiser found that the export value of the mer-chandise included the amounts indicated on the invoices as inland freight to shipping port, insurance premiums, storage, hauling and lighterage, and petties.[7] Reviewing the record made in the cited *Strombecker* case, the appellate term of this court in an opinion by Associate Justice Clark [8] found (finding 11) that Strombecker "* * * negotiated for the purchase of the merchandise involved at prices which included delivery to his buying agent's warehouse and was able to take delivery from the various manufacturers at such warehouse, and that other purchasers represented by the purchaser's buying agent were able to do likewise." As a matter of law, the court concluded that the export value of the invoiced merchandise should not include the inland charges. The fact that this case involves valuation on constructed value basis is a distinction without legal difference so far as it concerns the invoiced inland charges. Inland charges incurred by a purchaser at no expense to the manufacturer are not part of statutory constructed value. *Tapetes Luxor, S.A.; et al.* v. *United States, supra.*

The testimony of Mr. Alan Shure [9] in this case is of the same quality and weight as his testimony in *Strombecker, supra.* In my opinion this case merits the same result as in *Strombecker, supra,* for the following reasons: Mr. Shure stated that in connection with the pur-chase of the imported merchandise he traveled to Japan. In substance, he testified that in Japan he solicited and contracted with Bee West Co. to assist him in the purchase of the imported merchandise; to take delivery of the merchandise from the manufacturers for Strom-becker and to service the shipment of the merchandise in return for which plaintiff agreed to pay Bee West Co. a commission.

The affidavit of Mr. Genichiro Onishi (exhibit 1), managing director of Bee West Co., is of the same quality and weight as the affidavit of his father, Akio Onishi, chairman of the board of Onishi Company, the stipulated buying agent in *Strombecker, supra.*[10] Genichiro Onishi's affidavit states that Bee West Co. is a wholly owned subsidiary of

[7] The invoiced buying commission was not involved because defendant conceded that it represented an amount paid to Strombecker's *bona fide* buying agent.

[8] The Honorable Tom C. Clark, Associate Justice of the Supreme Court of the United States, retired, sitting by special designation.

[9] Mr. Shure was vice president of Strombecker at the relevant times the imported merchandise was imported.

[10] Defendant's objection to the affidavit in evidence is overruled. Plaintiff received the affidavit after it served the notice of trial and obviously could not furnish a copy to defendant with the notice of trial as provided in rule 9.6(b). I am not impressed that defendant says that because of plaintiff's failure to comply with the rule defendant has been "unable to prepare its own case in response to the specific contents of [the affidavit] * * *" simply because defendant reserved that contingency on the record. In any event no harm has been shown by defendant, particularly in view of my statement as trial judge: "Well, you gentlemen are familiar with the latter portion of rule 9.6(b), I assume, with reference to it 'may be waived or the time extended upon consent or by order of the court for good cause shown.' Now, if you want to continue this matter, you can go through the affidavit, the court would be amenable to that.'"

Onishi Company created to serve as an agent for foreign importers who buy merchandise in Japan. The affidavit further states that Onishi Company began acting as buying agent for Strombecker Corp. in 1960 and that in 1965, through the period April 1969 (the times here in issue), the function of buying agent was transferred to Bee West Co. The affidavit delineates the services Bee West Co. performed as buying agent and recites that the Bee West Co. commission and expenses incurred incident to delivering the merchandise from the Bee West Co. warehouse aboard the vessel were for the account of Strombecker and paid by Strombecker at no cost to the manufacturers of the merchandise covered by the shipments. Attached to the affidavit are copies of the agency agreements between Strombecker Corp. and Bee West Co.

Defendant argues that the Treasury report (exhibit A), which defendant introduced in evidence, "is persuasive of Bee West's role *qua* seller." (Defendant's brief, page 15.) I have read the report and find nothing in it that even suggests that in this case Bee West Co. acted as seller in its transactions with Strombecker. Aside from the mere saying, defendant refers to nothing specific in the report that would tend to support the fact that Bee West Co.'s relationship to Strombecker was that of a seller. To the contrary, the report appears to indirectly corroborate Bee West Co.'s role as buying agent in referring to the buying commission and the fact that Bee West buys merchandise from various manufacturers on behalf of Strombecker. The report does question certain aspects of the buying commission relevant to the amount Strombecker agreed to pay and the amount recited in purchase orders. The amount of the buying commission is not, however, an issue in this case. *Ross Products, Inc.* v. *United States*, 41 Cust. Ct. 550, R.D. 9225 (1958). The report also refers to "hidden profit" realized by Bee West Co. from the difference between the invoiced "ex-factory" price and the price Bee West Co. paid to each manufacturer. The alleged "hidden profit" is not factually developed and certain supportive exhibits referred to and said to be attached to the report are not part of the Treasury report in evidence. To repeat, nothing said in the report tends to rebut the Bee West Co. role as Strombecker's buying agent. Since there is no specific reference in the report concerning invoiced inland charges and buying commission, I am inclined to give the report little weight on those specific issues. *United States* v. *William Shalland*, 30 Cust. Ct. 575, A.R.D. 12 (1953); *A. Goldmark & Sons Corp.* v. *United States*, 15 Cust. Ct. 431, Reap. Dec. 6225 (1945); *G. R. Kirk Co. et al.* v. *United States*, 7 Cust. Ct. 424, Reap. Dec. 5387 (1941).

I find as facts:

1. That except for the appraisements in R70/8926, R70/9645, R70/3411 and R70/4091, the merchandise covered by the appraise-

ments in this case, on constructed value basis, was *inter alia* valued at the invoice unit prices, net packed, plus separately stated invoice inland charges and buying commission marked (X) on the invoices.

2. That Strombecker Corp. purchased the merchandise covered by these reappraisements from various manufacturers in Japan and in that connection employed the services of Bee West Co. as buying agent.

3. That the disputed charges marked (X) on the invoices represent charges incurred after the various manufacturers delivered the merchandise to the buyer's agent Bee West Co.

4. That none of the disputed charges marked (X) on the invoices was an expense to any of the manufacturers incident to the production of the merchandise or packing the merchandise ready for shipment to the United States.

I conclude as follows:

1. That in this case constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended, is the proper basis of appraisement.

2. That except for R70/8926, R70/9645, R70/3411 and R70/4091 the appraised values are separable as to the invoice unit prices, net packed, and the stated invoice inland charges and buying commission marked (X) on the invoices.

3. That except for R70/8926, R70/9645, R70/3411 and R70/4091 the constructed values of the merchandise in this case are the appraised values exclusive of the invoiced amounts for those items marked (X) on the invoices.

Reappraisements R70/8926, R70/9645, R70/3411 and R70/4091 are severed from this case and as to those four this case is dismissed.

Judgment will be entered accordingly.